1

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        NORTHERN DIVISION

 3


 4        UNITED STATES OF AMERICA

 5             v.                          CRIMINAL CASE NO.
 6                                         CCB-17-226

          ERIC WAYNE GRINDER,
 7
               Defendant
 8        _____/

 9


10                        VOLUME I
                   Tuesday, February 19, 2019
11                 Baltimore, Maryland

12
     Before:  Honorable Catherine C. Blake, Judge
13                      And a Jury

14


15   Appearances:

16        On Behalf of the Government:
           Paul A. Riley, Esquire
17         Paul E. Budlow, Esquire

18        On Behalf of the Defendant:
           Elizabeth G. Oyer, Esquire
19         Kirstin M. Hopkins, Esquire

20


21


22   ----------------------------------------------------------------

23             Mary M. Zajac, RPR, FCRR
               Fourth Floor, U.S. Courthouse
24              101 West Lombard Street
                Baltimore, Maryland 21201
25
```

```
1                    (Voir Dire filed in different transcript.)

2                    (Afternoon Session commences at 2:00 p.m.)

3             THE COURT:  Okay.  So we have a few issues.  We're

4    going to see how much we can get on the record at the moment.

5    But to start with, I think perhaps we should do the arraignment

6    on the third superseding.

7             THE CLERK:  Please stand.  Please state your name for

8    the record.

9             THE DEFENDANT:  Eric Grinder.

10            THE CLERK:  What is your age?

11            THE DEFENDANT:  37.

12            THE CLERK:  What year were you born?

13            THE DEFENDANT:  1981.

14            THE CLERK:  Mr. Grinder, how do you wish to plead to

15   Counts One through Nine of the third superseding indictment?

16            THE DEFENDANT:  Not guilty.

17            THE CLERK:  Thank you.

18            THE COURT:  Thank you.  You can be seated.  There was

19   an issue -- and you can tell me where things stand at the

20   moment -- with the presence of the victim's mother, under the

21   Crime Victims' Rights Act, which we discussed, and the government

22   has given me a letter about it.  Where does that stand?

23            MR. BUDLOW:  Your Honor, no change from the

24   government's perspective.  And Ms. Grinder's present in the

25   courtroom, as she was during the jury selection this morning.
```

1      THE COURT:  Okay.  Anything else that the defense wants

2 to say?

3      MS. OYER:  Your Honor, I want the record to be clear

4 that we are objecting to the presence of Mrs. Grinder because we

5 understand her to be a key witness in the government's case.  We

6 therefore think that it's appropriate to invoke Rule 615 of the

7 Federal Rules of Evidence and exclude her based on the likelihood

8 that her testimony could be influenced by the testimony of

9 witnesses who precede her.  It's our understanding that she is

10 essentially expected to connect the dots set forth by the

11 testimony of witnesses who will precede her.  And based on the

12 nature of her testimony, it would be prejudicial to have her

13 present in the courtroom during the testimony of other witnesses.

14      We believe that the victims, the Crime Victims' Rights

15 Act, which the government has invoked, is a basis for the victim,

16 the minor victim herself, to be present if she chose to, perhaps

17 even under these circumstances.  But we think that another

18 representative could equally represent her interests in the

19 courtroom.  It does not have to be Mrs. Grinder, who's a key

20 government witness.  And we are moving to exclude her, prior to

21 her trial testimony, on that basis.

22      THE COURT:  Okay.  All right.  Thank you.

23      Having looked at the statute and the cases that the

24 government provided in its letter dated February 18th of 2019, I

25 will overrule the objection to Ms. Grinder being here.  I think

4

1    that she, as the mother of the minor victim, is the one that has

2    and should assume the rights of the minor child.  While the

3    statute provides that there might be other people appointed to do

4    that function, that is if and when necessary, here, clearly, we

5    have the mother, the most logical guardian, who I think succeeds

6    to the victim's rights under the statute and therefore is

7    entitled to be here unless the defense has presented clear and

8    convincing evidence that the testimony she will give would be

9    materially altered if she hears other testimony.

10            I certainly understand the defense objection, but I

11    don't think it prevails in light of the clear language of the

12    statute.

13            Do you -- the government had requested to put certain

14    things on the record regarding a case, two cases, Lafler and

15    Frye.  And while I did not think it appropriate to refer this for

16    some sort of hearing, I will permit the government to put on the

17    evidence, on the record what it would like to regarding plea

18    discussions.

19            MR. RILEY:  Yes, Your Honor.  There were, there was no

20    formal plea offer made in this case.  The parties had informal

21    plea discussions very early on in the case.  The government

22    extended an informal plea offer.  That informal plea offer was

23    rejected.

24            Not long ago, Your Honor, the parties, after the

25    pretrial conference before the Court, the parties discussed a

5

1    potential resolution of this case again.  Again, informal

2    discussions, Your Honor.  And that, that proposed disposition

3    included both the federal case, as well as the state case.  It's

4    the government's understanding that that offer has not been

5    accepted, either.

6              THE COURT:  Well, to be clear, there was not any actual

7    offer.

8              MR. RILEY:  Thank you, Your Honor.  Yes, there was

9    never a formal offer.

10             THE COURT:  Okay.  Anything that, Ms. Oyer, that you

11   think is incorrect or that you want to discuss further?

12             MS. OYER:  Well, Your Honor, I think that in light of

13   the record, the government has made the record, should also

14   reflect that Mr. Grinder has repeatedly offered to plead guilty

15   pursuant to a conditional plea that would allow him to reserve

16   his appellate rights under the Fourth Amendment issue that we've

17   already litigated.

18             THE COURT:  All right.  And the government chose not to

19   accept that.

20             MR. RILEY:  Yes, Your Honor.

21             THE COURT:  Here we are.  All right.  Is there -- well,

22   let me turn to the issue of publishing the child pornography to

23   the jury in a limited fashion.  And again, counsel can correct me

24   if I'm stating anything wrong about what we might have discussed

25   in chambers.

1          My concern throughout the conversations that we've had

2     leading up to today is that the jury not unnecessarily be exposed

3     to the child pornography pictures in this case in light of the

4     defense stipulations.  It is my understanding that other than

5     offering the stipulations, the defense is essentially taking no

6     position on the publication of the images.

7          The government has agreed to substantially limit what

8     it publishes to the jury.  Of course, the jury would also have

9     the right to come back and ask to look at images or videos again

10    if they felt it necessary.  But at least in the course of

11    offering the evidence, the government will publish as little as

12    it thinks absolutely necessary.

13         I have reviewed the cases that the government cited in

14    its letter of February 17 of 2019.  And it certainly is correct

15    that, in general terms, the government has the right to prove its

16    case in the manner that it finds appropriate other, of course,

17    than the stipulation in Old Chief to a prior felony.

18         Having also been able to excuse from the jury at least

19    everyone that came forward and affirmatively indicated that they

20    would have some problems looking at the, at the images, subject

21    to anything else anybody wants to say, I would be allowing the

22    government to publish the images and the photographs in the most

23    limited way possible.  The public monitor will not be turned on.

24         Anything anybody needs to add to that?

25         MR. RILEY:  No, Your Honor.

7

1           THE COURT:  Okay.  There was an issue about the

2    defendant's use of the search terms.  The defendant had a motion

3    in limine about the various search terms, which is also laid out

4    in the February 17th government's letter.  Does the defense want

5    to be heard on that any further?

6           MS. HOPKINS:  Your Honor, I just want to make it clear

7    for the record which of the government's exhibits we're objecting

8    to.  And those are 30-A, 30-B, 30-C, 30-D, 30-E, 30-F, 30-G,

9    33-F, 33-G, and 33-H.  And we're objecting to those for all the

10   reasons in our motions in limine.  We're also objecting to any

11   related testimony.

12          THE COURT:  Okay.  All right.  And that objection

13   obviously is preserved.  Having looked at what the language is

14   and the government's argument for why it wants to present this, I

15   think that, well, I'm going to permit the government to put that

16   evidence in.  I think that it is their burden, as we are here,

17   going to trial, to prove all the elements of the offense,

18   including that, for example, the defendant knew that the images

19   were on his computer, in terms of the ones that are not produced,

20   and also it would, the fact that he was searching for these kinds

21   of sites would add to the circumstantial evidence that he, in

22   fact, produced these videos and images.

23          I don't see how there's any unfair or undue prejudice.

24   Obviously, it's the very subject of the case.  Can't exactly get

25   around it.  And it's not anything different or more prejudicial

1    than the pornography itself.

2              So I would deny that motion in limine.

3              We have the reconsideration of the motion to suppress.

4    Is there anything else?  In terms of motions in limine, I can say

5    tentatively, unless something changes in the course of the

6    evidence, that I'm letting in, and I'm sure it was objected to,

7    the coded letter that forms the basis of the witness tampering

8    charge in Count 9.  I am not at this point admitting the second

9    coded letter, which is not the subject of Count 9, on the

10   assumption that essentially it would be undisputed that the

11   defendant is responsible for the letter that is the subject of

12   Count 9.  We'll see how that, see how that goes.  And I therefore

13   would not admit any jail calls about that letter.

14             I am admitting the recorded jail call involving Mr.

15   Grinder's mother that discusses the first letter and includes a

16   conversation about whether he did this, and also a conversation

17   about the search warrant and why, from Mr. Grinder's point of

18   view, why his mother took them to the garage that, in fact, had

19   Mr. Grinder's sweatpants in it.

20             But I am excluding the additional call from an

21   unrelated person with no other particular connection to the case,

22   a conversation with, I believe, that occurred during the lacrosse

23   game, but another individual to whom Mr. Grinder made a

24   statement, which was not a clear admission.

25             What have I left out?  Anything we need to address

1    right now?

2              MS. HOPKINS:  Your Honor, I just want to, again, just

3    make it clear for the record which exhibits we are objecting to.

4    The discussion of the first letter, that's Exhibit Number 5 in

5    ECF Number 89.  And then we're also objecting to Exhibit 1 with

6    ECF Number 93, which is the call that Mr. Grinder had with his

7    mother.  And we're objecting to these for the same reasons in our

8    motions in limine.  Essentially, relevance, prejudice, cumulative

9    evidence, and a waste of time.

10             THE COURT:  Okay.

11             MR. RILEY:  Nothing further from the government's

12   perspective, Your Honor.

13             THE COURT:  Okay.  All right.  So the next step here

14   would be to bring in the jury, have them sworn.  I have some

15   brief preliminary instructions for them, including an extremely

16   brief recitation of the elements of the offense, the government's

17   Jury Instruction Number 46, and perhaps 49, the definition of

18   sexually explicit conduct -- I didn't see that either of those

19   had any objection to them -- Number 51, which is the attempt, and

20   Number 60, the elements of witness tampering, obviously, with the

21   usual instruction to the jury that if there's anything different

22   at the end of the case, they'll follow what they hear at the end

23   of the case.  But it would be fairly, fairly brief.

24             And about how long does the government expect to need

25   in opening?

1          MR. RILEY:  Sorry, Your Honor?

2          THE COURT:  How long do you think you need in opening?

3          MR. RILEY:  Twenty minutes, Your Honor.

4          THE COURT:  Ms. Oyer or Ms. Hopkins?

5          MS. OYER:  Your Honor, less than five minutes.

6          THE COURT:  Okay.  All right.  Then we'll bring in the

7    jury, have them sworn.  Let me also ask, will you be ready to go

8    right into opening, Mr. Riley?

9          MR. RILEY:  Yes, Your Honor.

10         THE COURT:  Okay.

11         MR. RILEY:  Your Honor, the only thing that I may need

12   is the microphone from Ms. Moye.

13         THE COURT:  Sure.

14         (Jury enters the courtroom at 2:20 p.m.)

15         THE COURT:  All right.  Welcome back.  And you can all

16   be seated for a moment.  Waiting for Ms. Moye because the first

17   thing we need to do is to have you all sworn in.

18         THE CLERK:  Members of the jury panel selected in the

19   present case, please stand and raise your right hand.

20         (Jury sworn.)

21         THE CLERK:  Thank you.  You may be seated.  Jury sworn.

22         THE COURT:  All right.  Thank you, ladies and

23   gentlemen.  As I said, I'm going to give you some brief

24   preliminary instructions, and then we'll get started with the

25   case.

1    As many of you have probably already realized, it's

2  going to be your job to decide, based on the evidence, what the

3  facts in this case are.  You are the only judges of the facts.

4  You do have to apply the law as I will give it to you to those

5  facts.  You have to follow the law, whether you agree with it or

6  not.  But nothing that I may say or do during the course of the

7  trial is intended to indicate what I think your verdict ought to

8  be.  That is up to you.

9    The evidence that you're going to have to decide the

10  facts will be testimony of witnesses sworn in, testified to you

11  under oath right there.  There will be documents, other things

12  that are admitted into the record as exhibits.  And there may be

13  some stipulations.  There will be things that the parties agree

14  to or stipulate to that you may also consider as evidence.

15    There are certain things that are not evidence.  That

16  includes the statements and the arguments and the questions of

17  the lawyers, as well as objections to questions, if there are

18  any.

19    Lawyers do have an obligation to their clients to make

20  objections when they believe evidence that's being offered is

21  improper for some reason under the rules of evidence.  You should

22  not be influenced by the objection or by my ruling on it.

23    If an objection is sustained, just ignore the question.

24  If it's overruled, treat the answer like any other part of the

25  testimony.

1          Obviously, if I tell you that some item of evidence is

2   being admitted for a limited purpose only, you must follow that

3   instruction.  Or if I tell you that certain testimony is stricken

4   or should be disregarded, please follow that instruction.

5          Ordinarily, the witnesses who, who testify in court

6   don't express their opinions.  Rather, they come in and tell you

7   what they heard or saw.  There are exceptions to that where there

8   is a witness who, because of their background, training,

9   experience, has some special expertise in a particular field, and

10  they may be permitted to express opinions if it would be helpful

11  to the jury in reaching their conclusion.

12         Expert testimony, however, like any other testimony, it

13  is up to you to decide whether to accept it or reject it or how

14  much of it to consider.  You should think about the reasons that

15  the expert is offered and their training and experience, and then

16  you give the testimony the weight you think it deserves.

17         Anything that you may have seen or heard outside the

18  courtroom or that you may see or hear outside the courtroom, as I

19  tried to make clear already, it's not evidence.  It must be

20  disregarded.

21         Another way of looking at the evidence is to say that

22  it can be direct or circumstantial.  By direct evidence, we mean

23  something like the testimony of an eyewitness, a person who was

24  present at an event, comes in and tells you what they saw or

25  heard.

1              By circumstantial evidence, we mean that you've got

2     proof of certain facts and, based on those facts, you may infer,

3     you may conclude, you may decide that other facts exist.  And the

4     simple example that I generally give is you go off to work in the

5     morning and it's a bright, sunny day.  You happen to work in an

6     office where there's no windows.  A couple hours later one of

7     your coworkers comes in and they're holding up a dripping wet

8     umbrella, taking off a dripping wet raincoat.  You didn't see it

9     rain because you couldn't see out the window, but based on what

10    you do see it would be reasonable for you to conclude that it

11    must have been raining outside.

12             That's all we mean by circumstantial evidence.  You

13    have proof of certain facts that lead you to conclude that other

14    facts exist.  And you may consider both direct and circumstantial

15    evidence in this case.

16             As I indicated in regard to experts, it's going to be

17    up to you to decide which witness to believe, which witness not

18    to believe, or how much of any particular witness's testimony to

19    accept or reject.  I may give you some guidelines on witness

20    credibility at the end of the case.  But essentially, it's a

21    matter of listening to them and applying your common sense.

22             As you know, this is a criminal case, and I will just

23    repeat a few things that I did say this morning.  But there are

24    some basic rules you have to keep in mind.

25             The defendant is presumed innocent unless and until

1  proven guilty.  The indictment, the charges brought by the

2  government against the defendant, are only an accusation, nothing

3  more, not proof of guilt or anything else.

4       And the burden of proof is on the government through

5  the very end of the case.  A defendant never has to prove that he

6  or she is innocent or present any evidence or testify.

7       The defendant has the right to remain silent.  So you

8  may not consider that in any way in arriving at your verdict, if

9  that is his choice.

10      And as I've indicated, the government does have to

11  prove the defendant's guilt beyond a reasonable doubt.

12      Now, the charges in this case, which I will just refer

13 to briefly, and I'm sure you will hear more about from counsel,

14 and substantially more at the end of the case, the counts, there

15 are several counts, nine counts, nine different charges, that is,

16 in the indictment.  Counts 1, 3, 4, 5, and 6 -- so the first six,

17 except for Count 2 -- charge production of child pornography.

18 And as to that, the government will have to prove beyond a

19 reasonable doubt, first of all, that the person referred to as

20 Jane Doe, the victim, was under the age of 18; second, that the

21 defendant used or employed or persuaded or induced or enticed or

22 coerced the victim, Jane Doe, to take part in sexually explicit

23 conduct for the purpose of producing or transmitting a visual

24 depiction, an image, a picture, a video, of that conduct; and

25 third, that this visual depiction, this image or picture, was

1    produced using materials that had been mailed or transported in

2    interstate or foreign commerce.

3            Essentially, sexually explicit conduct -- and I'll be

4    giving you a more full description of this at the end.  I should

5    also say, at the end you will have written jury instructions as

6    well to take back in the jury room with you.  But sexually

7    explicit conduct includes actual or simulated sexual intercourse

8    of various kinds, whether between adults, children, any person.

9    It also includes something called lascivious exhibition, which is

10   meaning a picture or depiction that displays or brings to view to

11   attract notice to the genitals or pubic area of children in order

12   to excite lustfulness or sexual stimulation in the viewer.  Not

13   every exposure of a child's genitals or pubic area constitutes

14   lascivious exhibition.  There will be various things for you to

15   consider in whether the government has met that particular part

16   of its proof.  That is a general definition.

17           Count 2 is attempt to commit production of child

18   pornography.  As to the attempt, the government would have to

19   prove, first, that the defendant did intend to commit the crime

20   of production of child pornography, as I've just described it to

21   you; and second, that the defendant did some act that was a

22   substantial step in an effort to bring about or accomplish the

23   crime, some substantial step towards trying to accomplish that

24   crime.  That is attempt in Count 2.

25           Counts 7 and 8, they are possession, as opposed to

1    production, possession of child pornography.  As to possession of

2    child pornography, the government would have to prove that the

3    defendant knowingly possessed or accessed a visual depiction,

4    picture; that this visual depiction was transported in or

5    affecting interstate or foreign commerce, or that it was produced

6    using materials that had been transported in or affecting

7    interstate or foreign commerce; third, they would have to prove

8    that that visual depiction was child pornography, which will be

9    further defined later; and fourth, that the defendant knew about

10   the sexually explicit nature of the material, and that this

11   visual depiction, this picture, was of an actual minor engaged in

12   that sexually explicit conduct.

13          And, finally, as to Count 9, Count 9 is a witness

14   tampering count.  For Count 9, the government would have to

15   prove, first, that on or about the date that's charged, which

16   you'll hear, the defendant knowingly, it says corruptly,

17   persuaded the Jane Doe, that's the victim, or attempted to do so,

18   that the defendant acted knowingly and with the intent to

19   influence the testimony of Jane Doe in an official federal

20   proceeding.

21          That is a very basic outline of the elements, as I've

22   said.  I'm sure you will hear more from counsel and also from me

23   at the conclusion of the case.

24          To be clear, if I didn't say this already, if there's

25   any difference between what I say now and what I say to you at

1   the end of the case, the instructions at the end of the case will

2   control.

3            In terms of your conduct as jurors, as I've already

4   told you, you need to decide the case just based on the evidence

5   here in the courtroom.  No independent research, please.  And as

6   I've said, please don't discuss the case with anyone, even among

7   yourselves.  And again, the reason is just that it's important to

8   keep an open mind until you've heard all the evidence.  Please,

9   so please don't form any opinion until all the evidence is in.

10           I think you'll find that the counsel ask questions that

11  need to be asked.  But as you're sitting there, if any of you has

12  a question that you would like to ask, don't discuss it with your

13  fellow jurors, but just write it down on a piece of paper, get my

14  attention or perhaps, more likely, Ms. Moye's attention, and I

15  will talk with counsel.  If it's a question that can be answered,

16  we'll try to answer if for you.

17           If you want to take notes during the course of the

18  trial, you may do that.  If some of you take notes and the others

19  don't, the notes will not control when you are deliberating.

20  Everybody's individual recollection is to be considered when you

21  deliberate in the jury room.  And if you take notes, they need to

22  stay here.  Don't take them out of the courthouse.  They need to

23  be in the courtroom or in the jury room.

24           One other thing.  When you go out to deliberate in a

25  couple days, we will ask you to elect a foreperson.  It can be

any one of you. We put you in the box in the order that you were on the list. The foreperson doesn't get an extra vote. We just need somebody to preside over your deliberations and be your spokesperson in court.

I also need to tell you that even though we have an excellent court reporter, we do not have instantaneous transcripts. I won't be able to give you a transcript of everything to read back at the end. Obviously, it's important to pay attention, takes notes if you want to.

The trial will begin in just a minute. The government has the right to make an opening statement, as does defense counsel. It's not evidence. It's just supposed to tell you a little bit about the case and what perhaps they expect to prove or expect the evidence to be, or not. It's just, as I say, it's not evidence. It's not an argument.

The government will then call witnesses. Defense counsel has the right to, may or may not choose to cross examine them. Once the government's case is done, the defendant has the right, again, but no obligation whatsoever, to call witnesses or present evidence.

Once the evidence is all in, the attorneys have the chance to speak with you again, summarize and interpret the evidence. And then you will go out to deliberate on your verdict.

So with that, I will turn to counsel. Mr. Riley, would

1   you like to make an opening statement?

2           MR. RILEY:  Yes, Your Honor.  Thank you.  Good

3   afternoon.

4           In March 2012, the defendant, Eric Grinder, started

5   dating a woman named Alisha O'Neil.  Alisha has a daughter, her

6   name is MG.  She was five years old at the time.  Alisha and the

7   defendant's relationship progressed and, in November 2013, they

8   were married.  One month later, in December 2013, the defendant

9   legally adopted MG and she became his daughter.

10          And shortly before they were married, the family moved

11  into a townhouse at 122 Laurel Valley Court in Abingdon,

12  Maryland.  Alisha didn't know, and MG couldn't have known, that

13  that house, that house would become a house of horrors.  In that

14  house, the defendant sexually abused MG, and he filmed it.  In

15  that house, the defendant put his penis inside MG's mouth, and he

16  filmed it.  In that house, the defendant put his finger in MG,

17  and he filmed it.  In that house, the defendant put a vibrator on

18  MG, and he filmed it.

19          Three years later, the defendant, Alisha and MG moved

20  to a new house, 261 Montpelier Court in Westminster, Maryland.

21  And this house, like the house at 122 Laurel Valley Court, became

22  a house of horrors, too.  The defendant once again used MG for

23  his own purposes, for his own sexual gratification, and he filmed

24  it.

25          The abuse didn't stop until November 28, 2016.  That's

1    the day Alisha and MG moved out of 261 Montpelier Court.

2         Ladies and gentlemen, this is a case about a man who

3    sexually abused his adopted daughter and filmed that abuse.  It's

4    a case about those pictures, those videos, those memorializations

5    of abuse that he created.

6         No question, child sex abuse, child pornography, a

7    tough topic.  It's tough to talk about.  It's tough to look at.

8    It's tough to think about.  Child pornography, as you just heard

9    from Judge Blake, and you will hear again at the end of this

10   case, is minors engaged in sexually explicit conduct.

11        Here's what it's not.  It's not kids in sexy poses.

12   It's not kiddie porn, whatever that means.  It's not family

13   photos in the bathroom.  It's not child modeling.

14        MS. OYER:  Objection, Your Honor.  I think this is

15   beyond the scope of offering an overview of the evidence.

16        THE COURT:  Overruled.  I don't -- I disagree.

17   Overruled.

18        MR. RILEY:  Child pornography is videos and images of

19   children being sexually abused, molested, raped, or being used

20   for purposes of sexual stimulation, and the viewing.

21        You're going to be hearing some -- you're going to be

22   seeing some of those images and videos during this case.  And

23   when you see those images, you will evaluate the evidence against

24   this defendant dispassionately.  Not based on emotion, but based

25   on the evidence, your logic, and common sense.  That's why you're

1    here.

2         Now, a day after MG and Alisha left 261 Montpelier

3    Court, on November 29, 2016, law enforcement executed a search

4    and seizure warrant at that address.  Among other things, a

5    Toshiba laptop was seized, a Samsung phone was seized, and MG's

6    bedding, some of MG's bedding was seized, including a purple

7    polka dot comforter.

8         The Toshiba laptop was examined by a computer forensic

9    examiner and the examiner discovered photographs of a minor being

10   abused.  He would eventually go on to examine the Samsung phone

11   and the SD memory card within it.  And he located additional

12   images and videos there, too.  And in one of those videos there

13   was a wedding ring.

14        After learning about the images of abuse on the laptop,

15   Homeland Security joined the investigation.  Now, with respect to

16   the images on the laptop, not surprisingly, the abuser's face was

17   not visible.  It was a man and he was wearing clothing, and the

18   closing was distinct.  He was wearing an orange shirt with at

19   least one hole at the bottom of his shirt, and he was wearing

20   dark blue pajama pants with an orange or red drawstring.

21        The images also included a distinct background.  There

22   was a unique marbling effect in the wall of the room where the

23   abuse took place.

24        So the investigation was focused on two things:  First,

25   who's the victim; second, who's the man.

1          Investigators quickly figured out that the victim was

2     MG.  Her face is visible in some of the images.  And her bedding,

3     a purple polka dot blanket, comforter, as well as a yellow

4     blanket, are visible in others.

5          So to figure out the identity of the abuser, law

6     enforcement needed to find that orange shirt, find those blue

7     pants with that red or orange drawstring, and figure out where

8     the abuse took place.  What was the room with that distinct

9     marbling effect on the wall?

10         So Agent Federico got a search warrant for the

11    defendant's house at 261 Montpelier Court.  He noticed there

12    weren't a lot of clothes in the house.  The dressers were looking

13    pretty bare.  But he did find one thing there:  Orange shirt,

14    holes at the bottom of it, identical to the ones he'd seen in the

15    images of abuse.

16         Later that day he executed a search warrant for the

17    defendant's mother's garage in Union Bridge, Maryland.  What did

18    he find there?  Blue pants with an orange or red drawstring.

19         Now, as, as the investigation continued, Agent Federico

20    was also able to identify the background where the abuse took

21    place.  He visited 122 Laurel Valley Court, walked upstairs to

22    the master bedroom, flicked on the light, and saw the distinct

23    marbling effect that he had seen previously in those images.  It

24    was created by an overhead fan with glass housing around the

25    light bulb.

1          Agent Federico would go on to obtain a search warrant

2     for the defendant's mother's apartment.  And during the execution

3     of that warrant, he seized the defendant's wedding band.  And it

4     was identical to the ones he had seen in the video.

5          As Judge Blake just told you, there are nine charges

6     you're being asked to consider in this case:  Five counts of

7     production of child pornography; one count of attempted

8     production of child pornography; two counts of possession of

9     child pornography; and one count of witness tampering.  The

10    evidence you will hear during this trial will establish each of

11    the elements for these charges beyond a reasonable doubt.

12         Now, as to production of child pornography, the judge

13    has just told you what the elements of that charge are.  Ladies

14    and gentlemen, the evidence will show that MG was a little girl

15    around nine years old when the defendant took pictures and videos

16    of her.  You'll be able to see the pictures for yourself and you

17    will hear from MG's mother that MG was born in October of 2006.

18         The evidence will show that the defendant not only

19    engaged in sex acts with MG, but he also repeatedly and carefully

20    filmed her.  Similarly, the evidence will show the defendant

21    repeatedly and carefully took close-up picture of the defendant's

22    genitals.  And finally, the evidence will show that the photos

23    and videos were produced using materials that were manufactured

24    outside the District of Maryland.  Toshiba laptop, made in China.

25    Samsung phone, made in China.  SD card within the phone, made in

1    China.

2           As to attempted production of child pornography, Judge

3    Blake just gave you a brief instruction with respect to that

4    charge as well.  First, the defendant intended to commit the

5    crime of production of child pornography and, second, the

6    defendant did some act that was a substantial step in an effort

7    to bring about or accomplish that crime.

8           The evidence will show the defendant intended to film

9    himself touching MG's vagina, but that he failed.  He failed to

10   capture her genitals on film.  You will see that the camera is

11   framed on MG's inner thigh, but her genitals are just out of

12   sight.  And you will see the defendant's hand moving in and out

13   of the frame, with his wedding band visible.

14          As to possession of child pornography charged in Counts

15   7 and 8, the elements are straightforward.  The judge just went

16   through them with you.  Count 7 pertains to at least one

17   depiction of child pornography knowingly possessed, knowingly

18   accessed, from the defendant's Toshiba laptop computer.

19          Count 8 pertains to at least one depiction of child

20   pornography knowingly possessed or knowingly accessed on the

21   Samsung phone.

22          And you will hear not only that the defendant possessed

23   images of MG, but you will see that he had other child

24   pornography on his laptop, too.  He tried to delete it but it was

25   still there.  And you will see it is of the exact same nature as

1    what he did to MG:  Adult males sexually abusing little girls.

2    And you will also hear and see that the defendant sought out

3    these files of child pornography by explicitly searching for

4    them.

5           As to Count 9, witness tampering, you will hear that in

6    July 2017, after the defendant had been charged federally, after

7    he'd been brought to court for his first appearance in this

8    courthouse, and during the period of time when he was detained

9    pretrial, he wrote a coded letter to his sister, Kayla Martin.

10   The evidence will show that in the coded letter he asked his

11   sister to talk to MG, to talk to MG and try to get MG to say that

12   he didn't do anything and, regarding pictures, quote, "she used

13   my phone while I was asleep."

14          Now, in terms of witnesses, you're going to be hearing

15   from just four witnesses:  Agent Federico of Homeland Security

16   investigations; Detective John Emminizer from the Westminster

17   City Police Department; Computer Forensic Analyst Steven Gibson;

18   and Alisha Grinder, the defendant's ex-wife, the mother of MG.

19          Agent Federico will tell you about the steps he took in

20   connection with the investigation, the seizure of that orange

21   shirt with the holes in the bottom, the seizure of those blue

22   pants with the orange or red drawstring, his discovery of the

23   distinct marbling effect on the master bedroom wall at 122 Laurel

24   Valley Court, the seizure of the defendant's wedding ring, and

25   the coded letter I referred to just a moment ago.

1          Detective Emminizer's testimony will be relatively

2     brief.  He will tell you about the seizure of various pieces of

3     evidence on November 29th, 2016, seizure of the defendant's

4     laptop, seizure of the Samsung phone, as well as the seizure of

5     MG's bedding, the purple polka dot blanket I referred to earlier,

6     and that you will see in some of the images and videos of child

7     pornography.

8          You'll next hear from Steven Gibson of Homeland

9     Security Investigations.  He's a computer forensic analyst.  He

10    will tell you about his forensic examination of the devices:

11    Phone, laptop, SD card.  And he will tell you about his discovery

12    of the child pornography photographs and videos in this case.

13    And not only the images and videos of MG, but other child

14    pornography, too.  He will also provide the information he

15    located as to the dates, images, and videos that were created.

16    And you will see during his testimony some of those images and

17    videos.

18          Finally, you'll hear that the defendant used a

19    peer-to-peer file-sharing program to search for child

20    pornography, that he visited numerous child pornography websites,

21    with a particular focus on incest and father/daughter sex.  You

22    will also hear that he entered search terms into various internet

23    search engines that were specifically focused on child

24    exploitation.

25          Finally, you'll hear from his Alisha Grinder, MG's

1    mother.  She will tell you about her marriage to the defendant,

2    defendant's adoption of MG. She will tell you about the move to

3    122 Laurel Valley Court.  She will tell you about the distinct

4    background in the master bedroom of that house.  She will tell

5    you about the occasions in which the defendant was alone with MG.

6    She will identify MG's bedding, the purple polka dot comforter,

7    and the yellow blanket.  And she will tell you how MG had both of

8    these pieces of bedding at both addresses, 122 Laurel Valley

9    Court and 261 Montpelier Court.

10           Finally, she will identify the defendant's laptop, his

11   phone, the orange shirt with holes in it, and his blue pajama

12   pants, the drawstring and, finally, his wedding ring.

13           In sum, ladies and gentlemen, the evidence will show

14   that MG, the victim in this case, is the defendant's adopted

15   daughter.  It will show that the abuse of MG occurred in Abingdon

16   and in Westminster.  It will show the defendant spent time alone

17   with MG.  It will show the defendant's orange shirt, blue pants

18   and wedding ring are visible in certain of the images and videos.

19   It will show that he possessed images of child pornography that

20   were not MG.  It will show that he repeatedly used the Internet

21   to seek out child pornography, with a particular interest in

22   father/daughter sex.

23           And it will show that all of the images and videos were

24   found on devices that belonged to the defendant:  Laptop, Samsung

25   phone.

1          Finally, it will show that after he was charged

2     federally, the defendant tried to get MG to say that she took the

3     images, not him.

4          In the end, ladies and gentlemen, when you've heard all

5     of the evidence, when you've heard from the witnesses and applied

6     your common sense and logic, you will have no doubt the defendant

7     is guilty on all nine charges in the superseding, in the third

8     superseding indictment.  And that is why, at the end of the case,

9     the government will return to you and ask you to find the

10    defendant guilty on all counts.  Thank you.

11         THE COURT:  Thank you, Mr. Riley.  Ms. Oyer.

12         MS. OYER:  Thank you, Your Honor.  Good afternoon,

13    ladies and gentlemen.  My name is Liz Oyer and, along with my

14    colleague, Kirsten Hopkins, who's seated at counsel table, I

15    represent the defendant in this case, Eric Grinder.  Mr. Grinder

16    is the gentlemen seated at our table in blue.

17         I want to start by thanking you for your service in

18    this case as jurors.  This is an extremely difficult case.  And

19    you're going to see and hear a lot of very painful things over

20    the next few days.  It is your job as jurors to watch and listen

21    to the evidence, and in this case that is not an easy job.  So we

22    thank you for it.

23         The government has talked to you at some length about

24    the evidence they plan to present.  And I am here to tell you, on

25    behalf of Mr. Grinder, that he is not disputing the government's

1    evidence in this case.  Mr. Grinder will not be contesting the

2    things that the government's witnesses tell you.  He's not going

3    to be challenging the things that the government's witnesses show

4    you.  And I expect that there will be no surprises from our

5    table.

6           What this means is that you won't be hearing very much

7    more from me or Ms. Hopkins during the course of this trial.  We

8    are going to be sitting here alongside you, observing the

9    government's presentation.  You may hear us raise legal

10   objections from time to time but, for the most part, we are going

11   to be sitting and watching and listening just like you.

12          We'll have one more opportunity to address you briefly

13   at the conclusion of the government's evidence when they've

14   finished their presentation, and until that time we thank you for

15   your service as jurors.

16          THE COURT:  Would you like to call your first witness?

17          MR. RILEY:  Yes, Your Honor.  The government calls

18   Agent Rick Federico.

19          THE CLERK:  Mr. Riley, if you would be so kind, please.

20          MR. RILEY:  Yes.

21          THE CLERK:  Thank you.  Please raise your right hand.

22       AGENT RICHARD FEDERICO, GOVERNMENT'S WITNESS, SWORN

23          THE WITNESS:  Yes.

24          THE CLERK:  Please be seated.  Please speak directly

25   into the microphone.  State and spell your full name for the

1    record, please.

2              THE WITNESS:  Richard Federico.  That's R-I-C-H-A-R-D.

3    F-E-D-E-R-I-C-O.

4              THE CLERK:  Thank you.

5              DIRECT EXAMINATION

6    BY MR. RILEY:

7    Q    Good morning, sir.

8    A    Good morning.

9    Q    Or good afternoon, I should say.  Are you employed?

10   A    Yes, I am.

11   Q    Where do you work?

12   A    For Homeland Security, Homeland Security Investigations.

13   Q    What's your title there, sir?

14   A    Special Agent.

15   Q    Okay.  And how long have you been employed by the Department

16   of Homeland Security?

17   A    Since the inception.  Inception, 2013, or 2003.

18   Q    And what's your current assignment at Homeland Security

19   Investigations?

20   A    I investigate cases involving child exploitation in

21   Frederick, Maryland.

22   Q    And how long have you been investigating child exploitation

23   cases?

24   A    Roughly about four to five years.

25   Q    And is there a particular type of case or cases that you

DIRECT EXAMINATION OF AGENT FEDERICO BY MR. RILEY          31

1    worked on before you started investigating child exploitation

2    cases?

3    A    Yes.  I used to do narcotic investigations, fraud cases,

4    immigration cases, stuff of that nature.

5    Q    Did there come a point in time where you opened a federal

6    investigation into someone named Eric Wayne Grinder?

7    A    Yes.

8    Q    When did that occur?

9    A    March 17th, 2017.

10   Q    Okay.  And generally speaking, what was the nature of your

11   investigations?

12   A    It was discovered child, child pornography on some

13   electronic equipment.

14   Q    So fair to say that your investigation involved potential

15   allegations of production of child pornography?

16   A    Yes.

17   Q    Now, now, what entity was, was HSI -- did you initiate the

18   investigation --

19   A    No.

20   Q    -- into the defendant?  Okay.  Who did?

21   A    Carroll County Advocacy Center.

22   Q    Okay.  And without getting into, without getting into

23   specifics, what was the first step in connection with that, or

24   one of the early steps in connection with that local

25   investigation?

1    A    The first step was an investigation.  It was a search

2    warrant in Carroll County at 2611 Montpelier Court, Westminster,

3    Maryland.  That was a state warrant.

4    Q    And when was that?

5    A    That was March -- November 29, 2016.

6    Q    Okay.  And at the time you opened the federal case, had you

7    seen any images of suspected child pornography that formed the

8    basis of your federal investigation?

9    A    Yes.

10   Q    Okay.  And generally speaking, can you tell the members of

11   the jury what you saw?

12   A    A prepubescent female engaged in several sex acts.

13   Q    Okay.  And were you able -- was the female alone?

14   A    No.

15   Q    Okay.  There was another individual in the room?

16   A    In the pictures, yes.

17   Q    Okay.  And can you describe, in the images that you saw, was

18   that individual wearing any clothing?

19   A    Yes, he was.

20   Q    Okay.  Generally speaking, can you describe what you saw him

21   wearing?

22   A    He was wearing an orange shirt, dark colored what I

23   considered pajama pants, with a wide drawstring, which is

24   orange-reddish color.

25   Q    Okay.  And did you notice anything else that was unique

1    about those image or images that you saw?

2    A    Yes.  In the background it was some type of marbling effect

3    on the back wall, on the back side of the photos.

4    Q    So you were just referring to an image or images of

5    suspected child pornography, right?

6    A    Correct.

7    Q    Did you view, in connection with your review of items from a

8    laptop, any items that were not child pornography?

9    A    Yes.

10   Q    Okay.  Can you tell the members of the jury what, generally

11   speaking, you saw?

12   A    It was an adult male, you can't see his face, but he was

13   wearing a dark colored T-shirt that said, had a logo GHB or

14   GBH -- GHB, and dark colored pajama pants, with an orange

15   drawstring.  And another one had a collared shirt with, it was

16   light in color, horizontal stripes, dark in color, and MG in the

17   video.

18   Q    Okay.  So you just referenced a video.  Were these two, were

19   there one item or two items?

20   A    Two items.

21   Q    Okay.  And were they images or videos?

22   A    Videos.

23   Q    So very generally speaking, when you open a federal child,

24   production of child pornography investigation, what are the

25   investigative steps that you take?

1   A    I try to identify the victim or the child in the images or

2   videos.  I look at any identifying marks, clothing, background,

3   as maybe furniture, maybe lighting, curtains, that nature.  And,

4   also, I look at the other person in the video, if he's, what type

5   of clothing is he wearing, identifying marks, tattoos, scars,

6   moles, whatever, that can help me identify maybe location as

7   well.

8   Q    Now shifting your attention back to this matter in

9   particular.  Did there come a point in time when you obtained,

10  when you applied for a search warrant from a federal magistrate

11  judge here in the District of Maryland?

12  A    Yes.

13  Q    And was that warrant authorized by the federal magistrate

14  judge?

15  A    Yes.

16  Q    Okay.  And when was that?

17  A    March 17th, 2017.

18  Q    So same day you opened the investigation?

19  A    Correct.

20  Q    And were any devices covered by this warrant?

21  A    Yes.

22  Q    Okay.  What?

23  A    The Toshiba laptop and a Samsung cell phone.

24  Q    Okay.  Same devices that were seized on November 29, 2016?

25  A    Correct.

1   Q    Anything else covered by that federal warrant?

2   A    Yes, the house located at 261 Montpelier Court in

3   Westminster, Maryland.

4   Q    Okay.  I want to come to the house in a minute.  Before I do

5   that I want to show you, mark this government exhibit -- may I

6   approach the witness, Your Honor?

7          THE COURT:  Certainly.

8   Q    Exhibit 1-A.  You recognize this?

9   A    Yes.

10  Q    What is it?

11  A    This is a Samsung cell phone that was sized on the state

12  warrant on November 29, 2016.

13  Q    Is it the same one you got a federal warrant for on March

14  17th?

15  A    Correct.

16  Q    Now, I'm going to show you now what's marked as Government's

17  Exhibit 1-B.  Quite small.  Do you recognize this?

18  A    Yes.

19  Q    Okay.  And what is it?

20  A    That's a SIM card that, it's associated with the Samsung

21  cell phone.

22  Q    Okay.

23  A    SD card.

24  Q    Sorry?

25  A    SD card.

1    Q    It's an SD card?

2    A    Yes.

3    Q    And very generally speaking, what is an SD card?

4    A    Just a storage, just holds storage for the phone.

5    Q    A memory device?

6    A    Correct.

7    Q    Okay.  Showing you what's been marked as Government's

8    Exhibit 2.  Recognize this?

9    A    Yes.

10   Q    Okay.  And what is it?

11   A    That's the Samsung cell phone.

12   Q    That's the one we were just looking at a moment ago?

13   A    Yes.

14   Q    Okay.  That was first page.  Showing you the second page of

15   Government's Exhibit 2.  Recognize this?

16   A    Yes.

17   Q    Okay.  And what is it?

18   A    That's the back side of the cell phone with the cover off.

19   Q    Okay.  I want to direct your attention here, on the

20   left-hand side of the page.  I'm making it somewhat larger now.

21   What's the model number of this phone?

22   A    SM-G900V.

23   Q    Okay.  And where was this SM-G900V phone manufactured?

24   A    China.

25   Q    Okay.  Now, directing your attention to where it says IMEI.

1    First off, very generally, what is an IMEI?

2    A    It's a unique number associated with that cell phone.

3    Q    Okay.  Now, can you read for the members of the jury the

4    IMEI associated with this cell phone?

5    A    The first letter -- let's see.  I can't see that first, the

6    first.

7    Q    Let me stop you right there if I could.  Would it help if I

8    actually gave you the --

9    A    Yes.

10   Q    -- actual phone?  All right.  Showing you Government's

11   Exhibit 1-A.  Can you read the IMEI number to the jury?

12   A    990004495000428.

13   Q    Now, directing your attention to the right-hand side of this

14   photograph and specifically this, this little gray slot here.  Do

15   you see that?

16   A    Yes.

17   Q    Okay.  What is that gray slot?

18   A    That's where the SIM card is placed in the phone.

19   Q    Showing you the third page of Government's Exhibit 2.  You

20   recognize this?

21   A    Yes.

22   Q    Okay.  And what is it?

23   A    That's a SIM card.

24   Q    That's the SD card?

25   A    SD card.  Correct.

1   Q    Okay.  And this is the, it's, it looks like it says Micro S.

2   Is that a particular model of SD card?

3   A    Yes.

4   Q    Okay.  Now, where was this Micro SD card manufactured?

5   A    China.

6   Q    Okay.  And looks like there's a series of numbers above

7   "made in China."  Do you see that?

8   A    Yes.

9   Q    Okay.  1000903482DUU.  Is that what it says?

10  A    Correct.

11  Q    All right.  Showing you what's been marked as Government's

12  Exhibit 3.  Do you recognize this?

13  A    Yes.

14  Q    Okay.  What is it?

15  A    The Toshiba Satellite laptop.

16  Q    Okay.  Is this the same laptop you obtained a search warrant

17  for on March 2017?

18  A    Yes.

19  Q    Showing you Government's Exhibit 4, first page.  This is the

20  same laptop you were just looking at a moment ago, right?

21  A    Yes.

22  Q    Photograph of it?

23  A    Yes.

24  Q    Okay.  Showing you the second page.  Recognize this?

25  A    Yes.

1    Q    Okay.  And what is it?

2    A    The back side of the laptop.

3    Q    Okay.  Now, directing your attention to the gray area on the

4    back side of the laptop.  Fair to say that there's a serial

5    number associated with this laptop, am I right?

6    A    Yes.

7    Q    This right here in the middle of where I've zoomed in a

8    little bit?

9    A    Yes.

10   Q    Okay.  And the serial number is 1A112898Q, is that right?

11   A    Correct.

12   Q    And where was this laptop manufactured?

13   A    China.

14   Q    Okay.  Now, you said, testified earlier that in addition to

15   the devices just talked about to the members of the jury, the

16   federal search warrant you obtained authorized a search of

17   premises, is that right?

18   A    Yes.

19   Q    Okay.  And that was 261 Montpelier Court in Westminster?

20   A    Correct.

21   Q    Okay.  And who, if anybody, was living there at that time?

22   A    Eric Grinder.

23   Q    Okay.  Anyone else?

24   A    No.

25   Q    And were there any items in particular that you were looking

DIRECT EXAMINATION OF AGENT FEDERICO BY MR. RILEY          40

1    at, looking for at 261 Montpelier Court?

2    A    Yes.

3    Q    Okay.  What?

4    A    I was looking for the orange T-shirt with the holes in it; a

5    dark-colored pajama pants with an orange drawstring; a collared

6    shirt, light in color with horizontal stripes; and a dark-colored

7    T-shirt, GHB logo to the left; and any other electronic devices.

8    Q    Okay.  So with respect to the clothing, those are the same

9    pieces, or those were pieces of clothing that you thought you may

10   have earlier observed and suspected images of child pornography,

11   is that fair?

12   A    Yes.

13   Q    Okay.  Now, did there come a point in time where you

14   executed that federal search and seizure warrant at 261

15   Montpelier Court?

16   A    Yes.

17   Q    Okay.  When was that?

18   A    That was March 21st, 2017.

19   Q    Okay.  Very generally speaking, what does it mean to execute

20   a warrant?

21   A    When we entered the house to search the house.

22   Q    Okay.  And were you present on March 21, 2017?

23   A    Yes.

24   Q    Okay.  Were you the lead investigator in connection with

25   that warrant?

1    A    Yes.

2    Q    Okay.  Showing you Government's Exhibit 5, first page.

3    Recognize this?

4    A    Yes.

5    Q    Okay.  What is it?

6    A    That's the house located on 261 Montpelier Court,

7    Westminster, Maryland.

8    Q    This is a photograph of the house?

9    A    Yes.

10   Q    Okay.  And does this photograph reflect the way the house

11   looked on March, March 21, 2017?

12   A    Yes.

13   Q    Okay.  Showing you the second and third page of Government's

14   Exhibit 5.  Just two additional views of 261 Montpelier Court, is

15   that right?

16   A    Yes.

17   Q    Okay.  Now, fair to say that the defendant was arrested on

18   March 21, 2017?

19   A    Yes.

20   Q    Okay.  And so when you executed the search warrant, there

21   was no one in the house, is that right?

22   A    That's correct.

23   Q    Okay.  Now, during your search of 261 Montpelier Court, did

24   law enforcement seize any items of particular evidentiary value?

25   A    Yes.

1   Q    Okay.  What?

2   A    Orange T-shirt.

3   Q    Okay.  Showing you the fourth page of Government's Exhibit

4   5.  You recognize this?

5   A    Yes.

6   Q    Okay.  And what is it?

7   A    That's the orange T-shirt that we seized on that day.

8   Q    Okay.  And let's, I'm going to back up and ask you to just

9   describe for the members of the jury what they are seeing in this

10  photograph more generally.

11  A    This is the master bedroom.  To the left is a dresser.  And

12  in the middle of this photo you see a bed.  And on top of the bed

13  is the orange shirt.

14  Q    Okay.  And you're referring to basically the orange shirt in

15  the middle of the page; is that fair?

16  A    Correct.

17  Q    Okay.  Now, can you describe in general terms sort of the

18  state of the house?

19  A    It appeared that somebody, it was, that they were moving

20  out.

21  Q    Okay.

22  A    It was very little clothing in the closet.  The drawers

23  were, didn't have very many clothing in it.  And the personal

24  effects, it was very limited.

25  Q    All right.  Showing you the fifth page of Government's

1    Exhibit 5.  You recognize this?

2    A    Yes.

3    Q    Okay.  What is it?

4    A    That's the dresser drawer to the dresser.

5    Q    Okay.  And this is in the master bedroom, right?

6    A    That's correct.

7    Q    Okay.  Directing your attention down to the lower right-hand

8    side of this picture.  Do you see that?

9    A    Yes.

10   Q    Okay.  What do we see in this picture?

11   A    It's a KY lubricant.

12   Q    Okay.  Showing you the sixth page of Government's Exhibit 5.

13   Now, this is the orange shirt that you seized on March 21, 2017,

14   right?

15   A    That's correct.

16   Q    A photograph of it?

17   A    Yes.

18   Q    Okay.  Going to direct your attention down to the bottom of

19   the photograph.  See that?  What do we see here in this

20   photograph?

21   A    Holes.

22   Q    Can you circle them for the members of the jury, by touching

23   the screen?

24            That's quite all right.  I think it's not working.  All

25   right.  But I'll just use my cursor.  You're referring to this

1    right here, right?

2    A    Correct.

3    Q    Hole?  Okay.  And there's another one right, basically right

4    in the center of, the lower center of the photograph.  Is that

5    fair?

6    A    Yes.

7    Q    It's another hole?  Okay.  Showing you the seventh page of

8    Government's Exhibit 5.  This is another angle of the orange

9    shirt you seized on March 21, 2017?

10   A    That's correct.

11   Q    Okay.  Showing you what's been marked as Government's

12   Exhibit 6.  Recognize this?

13   A    Yes.

14   Q    Okay.  What is it?

15   A    That's the shirt that was seized from the 261 Montpelier

16   Court on 3/21/2017.

17   Q    Going to go back to the sixth page of Government's Exhibit

18   5.  Fair to say there's a logo on the top left-hand side of this

19   shirt, right?

20   A    That's correct.

21   Q    Can you read to the members of the jury what that logo says?

22   A    DL Collins and Son.

23   Q    Okay.  And with respect to the shirt you seized on March 21,

24   2017, how did it compare to the orange shirt that you had earlier

25   seen in the images of suspected child pornography?

1    A    Identical.

2    Q    In what respect?

3    A    The color, the holes at the bottom of the shirt.

4    Q    In connection with your search warrant on March 21, 2017,

5    did law enforcement locate any electronics in the house?

6    A    Yes.

7    Q    Generally speaking, what?

8    A    Cell phones, cameras, that type of stuff.

9    Q    Fair to say that you were, in addition to this orange shirt,

10   you were also looking for a blue pair of pajama pants, right?

11   A    That's correct.

12   Q    Okay.  Did you find those blue pajama pants at 261

13   Montpelier Court?

14   A    No.

15   Q    Okay.  And I think you testified earlier that you were also

16   looking for two other shirts, right?

17   A    That's correct.

18   Q    Okay.  Did you find those two other shirts at 261 Montpelier

19   Court?

20   A    No.

21   Q    Okay.  Now, the morning of March 21, 2017, without getting

22   into specifics of the conversation, did you have a conversation

23   with anyone concerning the location of the defendant's

24   belongings?

25   A    Yes.

1    Q    Okay.  Who?

2    A    Kayla Martin and Leann Martin.

3    Q    Okay.  Now, as a result of that conversation, what was the

4    next investigative step that you -- who are they?  Let me ask

5    that question again.  Who is LeAnn Martin and Kayla Martin?

6    A    LeAnn Martin is Eric Grinder's mother.  Kayla Martin is Eric

7    Grinder's sister.

8    Q    As a result of that conversation, what was the next

9    investigative step that you took?

10   A    A search warrant was obtained for the garage/outbuilding

11   associated with ████████████████, Union Bridge.

12   Q    Okay.  Who lived at ████████████████, Union Bridge?

13   A    LeAnn Martin.

14   Q    Okay.  I think you said there was a garage associated with

15   ████████████████, is that right?

16   A    That's correct.

17   Q    And where was this, this garage vis-a-vis the building, ████████

18   ████████████, itself?

19   A    The garage is to the left of the house.  It sits further

20   back.

21   Q    Showing you the first page of Government's Exhibit 7.

22   Recognize this?

23   A    Yes.

24   Q    Okay.  And not sure I covered this earlier.  You executed

25   the second search warrant on March 21, 2017, too, right?

1    A    That's correct.

2    Q    Okay.  So this is the second search warrant you're doing on

3    March 21, 2017?

4    A    That's correct.

5    Q    Okay.  So looks like this is a large building, is that

6    right?

7    A    That's correct.

8    Q    Okay.  And where, where did, where did Ms. Martin live in

9    this building?

10   A    It's ███████████.  It's on the second story.  The door to

11   the left in the center, between the two doors, she's on the left.

12   Q    Okay.  All right.  Showing you the second page of

13   Government's Exhibit 7.  Recognize this?

14   A    Yes.  It's another picture of the house on ███████████

15   ███████, Union Bridge.

16   Q    This is another angle, basically, taken from the right-hand

17   side of ███████████████, is that right?

18   A    Correct.

19   Q    Showing you the third page of Government's Exhibit 7.

20   Recognize this?

21   A    Yes.

22   Q    Okay.  What's this?

23   A    That's the right side of the house.

24   Q    Okay.  Showing you the fourth page of Government's Exhibit

25   7.  Recognize this?

1    A    Yes.  That's the garage/outbuilding associated with the ███

2    ███████████   address.

3    Q    Okay.  This right here, this is a photograph of that

4    garage/outbuilding, right?

5    A    Correct.

6    Q    So it's this, this building right here that you obtained the

7    search warrant for, right?

8    A    That's correct.

9    Q    Looks like there was a lock on the door.  Is that fair?

10   A    Yes.

11   Q    Okay.  Did you break that lock to get in?

12   A    No.

13   Q    Approximately what time did law enforcement execute the

14   search and seizure warrant for this garage?

15   A    Approximately 2:22 in the afternoon.

16   Q    Showing you the fifth page of Government Exhibit 7.

17   Recognize this?

18   A    Yes.

19   Q    Okay.  What's this?

20   A    That's the inside of the garage.

21   Q    Okay.  Very generally, can you describe, describe this

22   photograph to the members of the jury?

23   A     It has personal belongings, you know, in the center.

24   There's a tarp covering some items.  And there's items to the

25   left, items to the right, all the way in the back.  So it's full

1    of items, personal items.

2    Q    During the search of this outbuilding, did law enforcement

3    discover any items of evidentiary value?

4    A    Yes.

5    Q    What did you find?

6    A    The dark-colored pajama pants with the orange drawstring,

7    orange-reddish drawstring, and a striped, collared shirt, light

8    in color with, with dark horizontal stripes.

9    Q    So two of the pieces of clothing that law enforcement was

10   searching for; is that fair?

11   A    That's correct.

12   Q    All right.  Showing you the sixth page of Government's

13   Exhibit 7.  You recognize this?

14   A    Yes.

15   Q    Okay.  What is it?

16   A    Those are the dark colored pajama pants with the orange

17   drawstring.

18   Q    Okay.  Can you describe to the members of the jury what's

19   happening in this photograph?

20   A    In this photograph, we're taking the bags of clothing out of

21   the garage and going through them.

22   Q    Okay.

23   A    That's why you see bags, like garbage bags and duffel bags

24   and that type.

25   Q    Okay.  Showing you the seventh page of Government's Exhibit

1    7.   This is another angle of the dark blue pajama pants, is that

2    right?

3    A    Correct.

4    Q    Okay.  What's, what's happening in this photograph?

5    A    They're just holding them up so I could take a picture of

6    the full length of the pajama pants.

7    Q    Okay.  Now, what, what, if anything, did you do with the

8    pajama pants after you discovered them?

9    A    I seized them.

10   Q    Okay.  I want to, before I do this, I want to direct your

11   attention to close to the middle of this photograph.  What do we

12   see here in this photograph?

13   A    It's the name of the clothing, Reebok.

14   Q    Showing you what's been marked as Government's Exhibit 8.

15   Recognize this?

16   A    Yes.

17   Q    Okay.  What is it?

18   A    Those are the, those are the pajama pants I seized on March

19   21st, 2017 from the ██████████████ address.

20   Q    And how did these pajama pants compare to the pajama pants

21   you had earlier seen in images of suspected child pornography?

22   A    Identical.

23   Q    Now, you made reference earlier to another piece of clothing

24   that you seized during the execution of the search warrant, is

25   that right?

1  A     Yes.

2  Q     Okay.  Showing you the eighth page of Government's Exhibit

3  7.  Can you tell the members of the jury what they're seeing in

4  this photograph?

5  A     A light-colored collared shirt with dark horizontal stripes.

6  Q     Okay.  Showing you the ninth page of Government's Exhibit 7.

7  Recognize this?

8  A     Yes.

9  Q     Okay.  It's another angle of the shirt that we saw on Page

10  8; is that fair?

11  A     Correct.

12  Q     Okay.  Showing you what's been marked as Government's

13  Exhibit 9.  Do you recognize this?

14  A     Yes.

15  Q     Okay.  What is it?

16  A     That's the shirt I seized on March 21st, 2017 from the █████

17  ███████████████  address.

18  Q     Same shirt that the jury had been looking at in the

19  photograph, is that right?

20  A     Yes.

21  Q     Okay.  And how did this shirt compare to the shirt you saw

22  in one of the videos that you referenced earlier?

23  A     Identical.

24        THE COURT:  Mr. Riley, just let me know when you're at

25  a good breaking point.

1     MR. RILEY:  Happy to take a break right now, Your

2     Honor.

3     THE COURT:  Ladies and gentlemen, we'll take the

4     mid-afternoon recess.  We'll be recessed for between 10, 15

5     minutes.

6          (Recess at 3:28 p.m. Resume at 3:40 p.m.)

7     THE COURT:  Are we ready to bring the jury back in?

8     MR. BUDLOW:  Yes, Your Honor.

9          (Jury enters the courtroom at 3:47 p.m.)

10    THE COURT:  All right.  You can all be seated.  Would

11    you like to continue, Mr. Riley?

12    BY MR. RILEY:

13    Q    Yes, Your Honor.  Agent Federico, I want to show you

14    Government's Exhibit 1-A again.  I'm going to ask you to

15    describe, describe it, that, for the jury?

16    A    It's a white Samsung cell phone with a cover.  The cover's

17    kind of worn.  It just flips over the phone with the window

18    visible so you can still see the, I guess the time or whatever is

19    displayed on the phone.  But it's covered.

20    Q    You referred to a window, is that right?

21    A    Correct.

22    Q    Is this what you're referring to here in the upper, the top,

23    the top one-third of the cover?  Is that fair?

24    A    Yes.

25    Q    That's the window?

1   A    Yes.

2   Q    It's translucent?

3   A    Yes.

4   Q    Agent Federico, you testified earlier that the defendant was

5   arrested the morning of three, of March 21, 2017, is that right?

6   A    Correct.

7   Q    Okay.  Generally speaking, what process is there, if any,

8   after someone is arrested?

9   A    Generally, the individual is booked into the county

10  Detention Center.  They're photographed.  All markings, tattoos,

11  are logged.  All the property that they have on their, is secured

12  in a safe place.

13  Q    Okay.  Showing you what's been marked as Government's

14  Exhibit 10.  First page.  Recognize this?

15  A    Yes.

16  Q    What is it?

17  A    That's a photo of Eric Grinder.

18  Q    Is this a booking photo of Mr. Grinder?

19  A    Correct.

20  Q    Okay.  Showing you the second page of Government's Exhibit

21  10.  Recognize this?

22  A    Yes.

23  Q    What is it?

24  A    That's a side profile, mug shot of Eric Grinder.

25  Q    Showing you the third page of Government's Exhibit 10.  You

1    recognize this?

2    A    Yes.

3    Q    Okay.  What is it?

4    A    It's a tattoo on Eric Grinder's back, above his, between his

5    shoulder blades, right below his neck.  It's a cross.  It's light

6    blue, maybe purplish in color, two rings in the center.  The

7    outer ring is like a reddish-orange the inner ring is like a

8    greenish color.

9    Q    Okay.  Showing you the fourth page of Government's Exhibit

10   10.  Recognize this?

11   A    Yes.

12   Q    What is it?

13   A    It's a tattoo, Asian writing, Scripture, on his right arm.

14   Q    Where were these photographs taken?

15   A    The Carroll County Detention Center.

16   Q    You referred to -- generally speaking, you referred to

17   property potentially being checked in during the booking process.

18   Is that fair?

19   A    Yes.

20   Q    Okay.  To your knowledge, did the defendant check any items

21   into the Carroll County Detention Center Property Department?

22   A    Yes.

23   Q    Your Honor, at this time I'm going to read a stipulation

24   between the parties.

25        THE COURT:  And I'll just remind the jury, a

1    stipulation is an agreement about some thing between the parties,

2    and you may consider it as evidence in the case.

3        MR. RILEY:  It's hereby stipulated and agreed by and

4    between the United States of America, by its attorneys, and the

5    defendant, Eric Wayne Grinder, as follows:  On or about March 21,

6    2017, during the booking process at the Carroll County Detention

7    Center after his arrest, the defendant's wedding ring was checked

8    into the Property Department of the Carroll County Detention

9    Center.

10       On or about April 12, 2017, LeAnn Martin, the

11   defendant's mother, retrieved the wedding ring from the Property

12   Department of the Carroll County Detention Center.

13   BY MR. RILEY:

14   Q    Agent Federico, after his booking, did the defendant remain

15   at the Carroll County Detention Center?

16   A    Yes.

17   Q    I want to shift gears a little bit and direct your attention

18   back to one of the investigative steps you took in connection

19   with your investigation.  Did there come a point in time when you

20   identified an earlier address that the defendant lived?

21   A    Yes.

22   Q    Okay.  And what address was that?

23   A    122 Laurel Valley Court, Abingdon, Maryland.

24   Q    Okay.  Now, in connection with your investigation, did you

25   visit that address on April 13, 2017?

1   A    Yes.

2   Q    Okay.  For what purpose did you visit that address?

3   A    I was looking for the, possibly the background marbling

4   effect that I had seen in the photos.

5   Q    And you said that you had seen in the photos.  Are you

6   referring to suspected images of child pornography that you had

7   earlier observed?

8   A    Yes.

9   Q    Okay.  Now, did you go inside 122 Laurel Valley Court?

10  A    Yes.

11  Q    Okay.  And what, if anything, did you discover when you went

12  inside that house?

13  A    I discovered that the marbling effect in the master bedroom

14  was caused by the light housing on a cell, on a cellular, a fan,

15  ceiling fan, that the housing around the light fixture was

16  etched.  So when the light was turned on, it created a marbling

17  effect on the wall.

18  Q    Let's unpack that a little bit.  I want to show you

19  Government's Exhibit 25, first page.  Recognize this?

20  A    Yes.

21  Q    And what is it?

22  A    That's the townhouse, picture of the townhouse at 122 Laurel

23  Valley Court, Abingdon, Maryland.

24  Q    The outside of the house; is that fair?

25  A    Yes.

1   Q    Okay.  Showing you the second page of Government's Exhibit

2   25.  Do you recognize this?

3   A    Yes.

4   Q    What is it?

5   A    That's the entrance to the master bedroom from the hallway.

6   Q    Okay.  Showing you the third page of Government's Exhibit

7   25.  Recognize this?

8   A    Yes.

9   Q    Okay.  And what do we see here?

10  A    That's a picture as you're looking into the master bedroom.

11  Q    Showing you the fourth page of Government's Exhibit 25.  Do

12  you recognize this?

13  A    Yes.

14  Q    Okay.  What is it?

15  A    That's the marbling lighting effect.

16  Q    Okay.  And fair to say that the effect is sort of splashed

17  up against the wall of the bedroom, is that right?

18  A    Correct.

19  Q    Showing you the fifth page of Government's Exhibit 25.  This

20  is another view of that effect, is that fair?

21  A    Correct.

22  Q    Showing you the sixth page of Government's Exhibit 25.

23  Recognize this?

24  A    Yes.

25  Q    Okay.  What is it?

1    A    That's the ceiling fan with the light housing that glass is

2    etched.  So when it's turned on, it gives that effect on the

3    wall.

4    Q    Okay.  So you're using the term "housing."  Is that the

5    glass that we're seeing around the light bulb; is that fair?

6    A    Yes.

7    Q    Okay.  Did you go through all of the rooms in 122 Laurel

8    Valley Court?

9    A    Yes.

10   Q    Were there any other fans in those rooms?

11   A    Yes.

12   Q    Okay.  Any other fans that had housing around light bulbs

13   like in this, like in the bedroom?

14   A    No.

15   Q    Okay.  And with respect to the marbling effect that you saw

16   when you visited 122 Laurel Valley Court, how did it compare to

17   the effect you saw in the earlier images of suspected child

18   pornography that you had viewed?

19   A    Very similar.

20   Q    I want to shift gears a little bit and direct your attention

21   to April 26, 2017.  As a result of your investigation, what, if

22   anything, happened that day?

23   A    Obtained a grand jury indictment for Eric Grinder for the

24   production of child pornography.

25   Q    So in other words, there were federal charges that were

1    returned by a federal grand jury?

2    A    Correct.

3    Q    I want to now direct your attention to May 4, 2017.  What

4    steps, if any, did you take with respect to the federal case that

5    day?

6    A    I picked up Eric Grinder from Carroll County Detention

7    Center and brought him to the US Courthouse in Baltimore,

8    Maryland, for his initial appearance on federal charges of

9    production of child pornography.

10   Q    And did, did that appearance happen that day?

11   A    Yes.

12   Q    Okay.  And after the court appearance, what did you do next?

13   A    I took him back to Carroll County Detention Center.

14   Q    Okay.  So after there were federal charges, did your

15   investigation of the defendant continue?

16   A    Yes.

17   Q    Okay.  Now, as part of your investigation, did you maintain

18   contact with the Carroll County Detention Center?

19   A    Yes.

20   Q    Okay.  In connection with your investigation, what, if

21   anything, did the Detention Center provide to you upon request?

22   A    Phone calls conducted by Eric Grinder, mail correspondence,

23   outgoing mail, emails, any visitations, that kind of stuff.

24   Q    You referred to, you referred to visitations.  Are

25   visitations with inmates at the Carroll County Detention Center

1    recorded?

2    A    Yes.

3    Q    Okay.  Did the Detention Center ever provide you property

4    that was confiscated from the defendant's cell?

5    A    Yes.

6    Q    Now, have you reviewed all of the items provided to you by

7    the Carroll County Detention Center?

8    A    Yes.

9    Q    Your Honor, at this time I would like to read another

10   stipulation into the record.

11             THE COURT:  All right.

12             MR. RILEY:  It is hereby stipulated and agreed by and

13   between the United States of America, by its attorneys, and the

14   defendant, Eric Wayne Grinder, as follows:  The defendant engaged

15   in visitations at the Carroll County Detention Center with the,

16   with visitors that were recorded.  The defendant engaged in the

17   visitation conversation listed below, and the recordings are

18   accurate and unaltered.

19             With respect to Exhibit 13-A, the date was March 24,

20   2017.  The identity of the visitor was LeAnn Martin.  With

21   respect to Exhibit 18-A, the date was July 8, 2017.  The identity

22   of the visitor was LeAnn Martin.

23             Officials at the Carroll County Detention Center

24   intercept and copy outgoing mail and the original is then placed

25   bag in the mail stream.  The following item of intercepted mail

1    was written by the defendant and obtained on or about the date

2    indicated.  The copied mail has not been altered.

3              Exhibit 17-A, date, July 2017.

4              On or about July 25, 2017, law enforcement officials at

5    the Carroll County Detention Center seized Government's Exhibit

6    19 from the defendant's cell.  Government's Exhibit 19 has not

7    been altered.

8    BY MR. RILEY:

9    Q    Agent Federico, I'm going to show you Government's Exhibits

10   18-A and 13-A.  And it's fair to say that Government's Exhibits

11   18-A and 13-A contain excerpts of conversations that the

12   defendant had while detained at the Carroll County Detention

13   Center?

14   A    Yes.

15   Q    You reviewed these excerpts?

16   A    Yes.

17   Q    And they're accurate?

18   A    Yes.

19   Q    Have you, have you also reviewed transcripts of these

20   recordings, which are marked for identification only as

21   Government's Exhibit 13-B and 18-B, and checked them for

22   accuracy?

23   A    Yes.

24   Q    Your Honor, at this time I would request permission to hand

25   out copies of the transcripts of these exhibits.

1          THE COURT:  Yes.  As that's being done, you're also

2    planning to play these conversations?

3          MR. RILEY:  Yes, Your Honor.

4          THE COURT:  Okay.  Ladies and gentlemen, first of all,

5    please don't start looking at the transcripts right now.  The

6    transcripts themselves are not the evidence.  The evidence that

7    you're going to have is the actual recorded calls.  The

8    transcripts are just to assist you as you're listening to the

9    calls.  So please keep in mind that if you hear something

10   different in the recording, what you hear controls.  The

11   transcript is not evidence.

12         MR. RILEY:  I'm going to play Exhibit 13-A.

13         THE COURT:  And is that the 13-B transcript?

14         MR. RILEY:  Yes, Your Honor.

15         THE COURT:  Like to look at it.

16         (Call playing.)

17   BY MR. RILEY:

18   Q    Agent Federico, whose voice is that reflected on that call?

19   A    That's Eric Grinder's and LeAnn Martin.

20   Q    When was this conversation recorded?

21   A    This conversation was recorded on March 24, 2017.

22   Q    When did you execute the federal search warrant at Ms.

23   Martin's garage?

24   A    March 21st, 2017.

25   Q    You testified earlier that you received copies of certain

1   pieces of outgoing mail from the Carroll County Detention Center.

2   Is that right?

3   A    Correct.

4   Q    I want to direct your attention to the time period of July

5   2017.  Did there come a point in time when you received a copy of

6   a piece of outgoing mail that appeared to be unusual?

7   A    Yes.

8   Q    Okay.  Can you tell the members of the jury about that?

9   A    I obtained a copy of a letter from Eric Grinder, it was

10  outgoing mail.  And in the letter it had regular writing, like

11  you were writing somebody.  And then the pages that followed

12  that, it was all numbers.

13  Q    Okay.  So I want to show you what's been marked as

14  Government Exhibit 17-A.  Do you recognize this?

15  A    Yes.

16  Q    Okay.  And what is it?

17  A    That's a copy of a letter, envelope from Eric Grinder to

18  Kayla Martin.

19  Q    As a reminder, who is Kayla Martin, again?

20  A    Kayla Martin is Eric Grinder's sister.

21  Q    Showing you the second page of Government's Exhibit 17-A.  I

22  want to direct your attention to the top of this page.  Can you

23  read to the members of the jury this salutation and then the

24  first sentence?

25  A    It says:  B, I am really sorry you got in trouble.  I am

1    already super stressed here as it is.  I worry all the time about

2    my kids.

3    Q    Okay.  Who's B?

4    A    B is Kayla Martin.

5    Q    Okay.  How do you know that?

6    A    In some of the phone calls, Eric Grinder addresses his

7    sister as B.

8    Q    Okay.  So I want to direct your attention to the last

9    sentence of the second page of Government's Exhibit 17-A, where

10   it starts with "I."

11   A    I found out something about MG that really worries me and I

12   am worried about the boys not having a father.

13   Q    Okay.  And the letter go on to enclose anything?

14   A    Excuse me?

15   Q    Does the letter go on to enclose anything?

16   A    Yes.

17   Q    Show, showing you the third page of Government's Exhibit

18   17-A.  You recognize this?  Sorry.  Showing the third page of

19   Government's Exhibit 17-A.  Do you recognize this?

20   A    Yes.

21   Q    Okay.  Is this the series of numbers that you were referring

22   to earlier?

23   A    Yes.

24   Q    Okay.  And showing you the fourth page and the fifth page of

25   Government's Exhibit 17-A.  So it looks like a three-page series

1    of numbers.  Is that fair?

2    A    Yes.

3    Q    Okay.  I want to direct your attention to the top of the

4    third page of Government's Exhibit 17-A.  Do you see that?

5    A    Yes.

6    Q    Okay.  What, first off, can you describe what we're seeing

7    here?

8    A    Looks like it has a dot at the top, and then, motion down,

9    like a shape of the letter C with arrows.

10   Q    Okay.  What was your understanding of this symbol when you

11   saw it?

12   A    My understanding was the alphabet was, the numbers are

13   associated with letters of the alphabet.  And instead of starting

14   with A as in 1, it started at Z as in 1 and A as in the number

15   26.  So it went backwards.

16   Q    Okay.  Did there come a point in time when you decoded this

17   series of numbers?

18   A    Yes.

19   Q    Okay.  Showing you what's been marked as Government's

20   Exhibit 17-B.  Is this the document you prepared that decoded the

21   series of numbers?

22   A    Yes.

23   Q    Okay.  Could you please read slowly Government's Exhibit

24   17-B to the members of the jury.

25   A    Kayla, I know you got in trouble cause of me.  Please do not

(No metadata)

1   tell anyone anything in this letter and burn it.  After you read

2   it.  I am sorry but you are the only person I can turn to that I

3   trust and I need you.

4   Q    Okay.  I'm showing you the second page of 17-B.  Continue.

5   A    I need you to mail that letter and contact MG if you can.

6   Talk to MG and just gain her ear.  I really need her to say I

7   didn't do anything and any --

8   Q    Third page.

9   A    -- pictures she used my phone while I was asleep.  It is the

10  only way I get to see my kids again.  Let her know she will not

11  be in trouble.  It seems whatever they have there is no proof I

12  took them.  I need her to understand that I will be in jail

13  forever.

14  Q    Showing you the fourth page.

15  A    And I'll never be able to see the boys.  This does not get

16  readed (sic) Kayla.  Please, if I have to spend the rest of my

17  life in jail, I probably will end up seriously taking my own

18  life.  I can't --

19  Q    Fifth page.

20  A    -- live not seeing my kids.  This is serious, Kayla.  My

21  life could be over.  I am super depressed.  I love you, B, and

22  thank you very much.  Tell MG I love her, please.

23  Q    Okay.  Did there come a point in time when you received a

24  recording from the Carroll County Detention Center, when you

25  understood that a coded letter was being discussed potentially?

1    A    Yes.

2    Q    I'm going to now play Government's Exhibit 18-A.  The

3    transcript is Government's Exhibit 18-B.

4              (Call playing.)

5    Q    Whose voices are we hearing on that call?

6    A    Eric Grinder and LeAnn Martin.

7    Q    And when was this, this conversation recorded?

8    A    July 8th, 2017.

9    Q    What step, if any, did you take after you learned of this

10   coded letter?

11   A    I contacted LeAnn Martin, Kayla Martin, and law enforcement.

12   Q    Okay.  Detective Federico, I want to direct your attention

13   now to July 25, 2017.  Without getting into what may have been

14   said, did you have contact with officials at the Carroll County

15   Detention Center that day?

16   A    Yes.

17   Q    Okay.  I want to show you what's been marked as Government's

18   Exhibit 19.  Recognize this?

19   A    Yes.

20   Q    Okay.  And what is it?

21   A    That is the key code to the coded letters.

22   Q    Where was this found?

23   A    In Eric Grinder's cell.

24   Q    Okay.  And looks like there's a series of numbers and then a

25   series of parentheses next to the numbers.  Can you explain to

1    the members of the jury what, what the numbers in the parentheses

2    are?

3    A    The numbers in the parentheses are associated with that

4    letter.  So the Z would be 1, and A would be number 26.

5    Q    I want to -- want to switch gears a little bit and direct

6    your attention to November 7 of 2018.  What, what investigative

7    steps, if any, did you take that day?

8    A    I obtained the federal search warrant for the address of

9    ████████████████, ███████████, Union Bridge, Maryland.

10   Q    Okay.  Can you tell the members of the jury who lives at

11   that address?

12   A    LeAnn Martin.

13   Q    What did that warrant authorize law enforcement to seize?

14   A    Eric Grinder's wedding ring.

15   Q    And why were you seeking out Eric Grinder's wedding ring in

16   connection with the federal search warrant?

17   A    To compare it to the video that was, that we had seen

18   depicting an adult male with a wedding ring on.

19   Q    And you used a term, said "a video that we had seen."  When

20   you saw that video, were you concerned at all about its contents?

21   A    Yes.

22   Q    Video's contents?

23   A    Yes.

24   Q    Okay.  And had that, that video been somewhat recently

25   discovered by law enforcement?

1   A    Correct.

2   Q    Okay.  And where was that video found?

3   A    I believe that video was found on the SIM card, or the SD

4   card.

5   Q    Okay.  Okay.  I want to direct you to November 9, 2018.

6   What was the investigative step, if any, that you took that day?

7   A    We executed the search warrant on ███████████████████,

8   ██████████,  in Union Bridge.

9   Q    Okay.  And did you obtain the ring that you were searching

10  for when you executed that warrant?

11  A    Yes.

12  Q    Okay.  Showing you, showing you what's been marked as

13  Government's Exhibit 11.  Do you recognize this?

14  A    Yes.

15  Q    What is it?

16  A    That's the wedding ring or wedding band that I seized on

17  November 9th and placed into evidence.

18  Q    Placed into evidence afterwards?

19  A    Yes.

20  Q    And now show you what's been marked as Government's Exhibit

21  12.  These are photographs of Government's Exhibit 11, 11, is

22  that right?

23  A    Yes.

24  Q    Okay.  Can you describe what the jurors are seeing in the

25  first page of Government's Exhibit 12?

1    A    It's a silverish color wedding ring or band with grooves on

2    the outer edges.

3    Q    Showing you the second page of Government's Exhibit 12.

4    Just another angle of the band, is that fair?

5    A    Correct.

6    Q    Showing you the third page of Government's Exhibit 12.

7    Another angle of that wedding band; is that fair?

8    A    Yes.

9    Q    Okay.  Now, how did this seized wedding band compare to the

10   wedding band that you had observed on the video found on the SD

11   card?  How did it compare?

12   A    Very similar.

13   Q    One moment, Your Honor.  No further questions at this time,

14   Your Honor.

15            THE COURT:  All right.  Thank you.  Ms. Oyer.

16            MS. OYER:  No questions of this witness.

17            THE COURT:  I'm sorry.  No questions?

18            MS. OYER:  No questions.

19            THE COURT:  Okay.  All right.  I thank you.  You can

20   step down, Special Agent.  Perhaps I can see counsel at the bench

21   for just a minute.

22            (Bench conference on the record.)

23            THE COURT:  So maybe we got here a little faster than I

24   thought we were going to, but I assume you don't have another

25   witness.

1          MR. RILEY:  Correct, Your Honor.

2          THE COURT:  Right.  Okay.  I will -- that's all right.

3  We can stick around and see if there's anything else we need to

4  talk about, the search warrant or anything.  And I'll excuse the

5  jury until 10 tomorrow, if, if they have to come.  Otherwise, 10

6  on Thursday.  Okay?

7          (End of bench conference.)

8          THE COURT:  All right, ladies and gentlemen.  It's

9  always a little difficult to predict exactly how long

10  everything's going to take.  But it appears that we've come to

11  the end of the available evidence for today.  I have some matters

12  to discuss with counsel, which I can do in a minute or two.

13          But we're going to, we're going to excuse you for

14  today.  Usual instructions.  Please leave your notes here.  Don't

15  talk about the case.  Keep an open mind.

16          Weather permitting, you should be back here a little

17  before 10 tomorrow for the case.  If the forecast is what it

18  sounds like, as I'm sure Ms. Moye told you, we will able to find

19  out if we're not able to be in court tomorrow because of the

20  driving and the distance, there will be a notice about that.

21  Certainly, we do not want any of you taking unnecessary risks in

22  your travel.  If for any reason there is court and you have some

23  genuine concern, you will let Ms. Moye know.  But I think we will

24  have a reasonable answer one way or the other tomorrow morning

25  when we see, when we see what happens.

1       So thank you all for your patience and attention so

2   far.  We'll see you either tomorrow or, if not, then Thursday by

3   10:00 to continue the case.  Thank you.

4       (Jury exits the courtroom at 4:26 p.m.)

5       THE COURT:  All right.  You can be seated.  I'll start

6   with the motion for reconsideration.  I have, obviously, a

7   motion, the government's response, and the defense reply.  But

8   I'm happy to hear if there's anything else that either side would

9   like to say about it.  Ms. Oyer or Ms. Hopkins?

10      MS. OYER:  Your Honor, with respect to the motion for

11  reconsideration, we will rest on the arguments that are set forth

12  in the legal briefing that we filed.

13      THE COURT:  Okay.  Mr. Riley.

14      MR. RILEY:  Same for the government, Your Honor.

15      THE COURT:  Okay.  All right.  Let me ask one, a

16  factual question.  There is a reference in the government's

17  response to Rule 41(g) and requesting return of property.  I

18  think the defense reply was that the federal rule, 41(g), doesn't

19  necessarily apply in a state situation.

20      Is there any evidence in the record of a request by Mr.

21  Grinder to have any of his electronic devices, phone and/or

22  laptop and/or SD cards, returned?

23      MR. RILEY:  Government's not aware of any, Your Honor.

24      MS. OYER:  Your Honor, there was no evidence presented

25  either way on that topic at the motions hearing.

1          THE COURT:  Okay.  Okay.  And, again, remind me of

2   which count.  The evidence that is about to be presented on all

3   but one of Counts 1 through 8 are the images of the minor victim

4   allegedly produced by Mr. Grinder, as opposed to separate, other

5   child pornography?  I'm trying to distinguish between pictures

6   that are in themselves evidence of the sexual abuse of a minor.

7          MR. RILEY:  Yes, Your Honor.

8          THE COURT:  Which I gather to be almost all of the

9   images that you're planning to present, as opposed to one of

10  these counts is three non-produced images from the laptop.

11         MR. RILEY:  Correct, Your Honor.  So those non-produced

12  images are part of Count 7.

13         THE COURT:  Count 7.

14         MR. RILEY:  The government's view is that the defendant

15  both possessed, with respect to the laptop, he possessed both the

16  produced images, as well as the non-produced images, that were on

17  that laptop.

18         THE COURT:  Okay.  Okay.  Well, I'm going to deny the

19  motion for reconsideration, obviously, resting on everything that

20  I said in my original opinion.  I will -- additionally, I think

21  there are distinctions between this and Mitchell, not the least

22  of which, of course, is that there was a warrant within, within

23  20 minutes.

24         I find that there is no evidence of Mr. Grinder having

25  requested these items back in any fashion that would influence

74

1    the length of the possession of the items, any electronic

2    devices.

3              The very first warrant it appears is sufficient to

4    cover everything that was, that is going to be introduced against

5    Mr. Grinder, other than Count 7, and it is itself child

6    pornography.  It is also evidence of the abuse of a minor victim,

7    which I believe was clearly covered by the first warrant.

8              And if it were necessary to get there -- again, I'm not

9    finding that there was such a delay in getting the federal

10   warrant that would interfere with any possessory interest -- but

11   if there is any problem, I would note that the, which I didn't

12   address the first time, I believe the first warrant is sufficient

13   to cover the three, even the three non-produced images of child

14   pornography.  Clearly, they were uncovered in the course of

15   looking for evidence of sexual abuse of a minor.

16             That, as I also said, I will just rest on everything

17   else that was in my initial memorandum.

18             Any other legal issues that we should be discussing

19   right now?

20             MR. RILEY:  Not from the government's perspective, Your

21   Honor.

22             THE COURT:  Ms. Oyer?

23             MS. OYER:  No, Your Honor.

24             THE COURT:  All right.  Well, you also will obviously

25   be able to find out whether we are going to be in court tomorrow

75

1     or not.  So I will see you either tomorrow or Thursday.

2              MS. OYER:  Your Honor, could I ask just a logistical

3     question about the circumstances of a court closure?

4              THE COURT:  Sure.

5              MS. OYER:  If it is not snowing first thing in the

6     morning but is likely to or forecasted to start snowing in the

7     morning, is it likely that the Court would close or would bring

8     in jurors?  I'm asking partly for self-interested reasons because

9     I also have a long commute, like many of the jurors probably, and

10    just wanted to understand if the Court will be likely to close if

11    it's going to start snowing mid-morning or something like that.

12             THE COURT:  Yeah.  I don't any longer make the decision

13    for the entire court.  But, certainly, I think it is the normal

14    practice of those who consult that, yes, if it's anticipated that

15    there will be a problem, even if it's not going to begin by

16    mid-morning but it's something sufficient that likely the Court

17    will be closed perhaps -- Ms. Moye, if there's a way you can find

18    that out, make sure you find that out as soon as possible, also.

19    Certainly can try to call chambers.

20             I will tell you that my thought is that if the weather

21    looks sufficiently bad, given where all our jurors come from,

22    that even if the court does not close, I may very well decide not

23    to call in the jury.  I will be trying to make that decision

24    along with the Clerk and the Chief Judge very early tomorrow

25    morning.

1          MS. OYER:  Thank you, Your Honor.

2          THE COURT:  Okay?  Anything else?

3          MR. RILEY:  No, Your Honor.

4          THE COURT:  Okay.  Thank you.

5          (Conclusion of Proceedings at 4:34 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                             INDEX

2

3                                                           PAGE

4       GOVERNMENT WITNESS

5       WITNESS: AGENT RICHARD FEDERICO

6       DIRECT EXAMINATION BY MR. RILEY                      30

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

78

1

2

3                            REPORTER'S CERTIFICATE

4

5            I, Mary M. Zajac, do hereby certify that I recorded

6   stenographically the proceedings in the matter of USA v. Eric

7   Wayne Grinder, Case Number(s) CCB-17-226, on February 19, 2019.

8            I further certify that the foregoing pages constitute

9   the official transcript of proceedings as transcribed by me to

10  the within matter in a complete and accurate manner.

11           In Witness Whereof, I have hereunto affixed my

12  signature this _____ day of _____, 2019.

13

14

15

16                         _____/S/_____
                           Mary M. Zajac,
17                         Official Court Reporter

18

19

20

21

22

23

24

25

## /

**/S** [1] - 78:16

## 1

**1** [6] - 9:5, 14:16, 65:14, 68:4, 73:3
**1-A** [3] - 35:8, 37:11, 52:14
**1-B** [1] - 35:17
**10** [8] - 52:4, 53:14, 53:21, 53:25, 54:10, 71:5, 71:17
**1000903482DUU** [1] - 38:9
**101** [1] - 1:24
**10:00** [1] - 72:3
**11** [3] - 69:13, 69:21
**12** [5] - 55:10, 69:21, 69:25, 70:3, 70:6
**13** [1] - 55:25
**13-A** [4] - 60:19, 61:10, 61:11, 62:12
**13-B** [2] - 61:21, 62:13
**15** [1] - 52:4
**17** [1] - 6:14
**17-A** [8] - 61:3, 63:14, 63:21, 64:9, 64:18, 64:19, 64:25, 65:4
**17-B** [3] - 65:20, 65:24, 66:4
**17th** [4] - 7:4, 31:9, 34:17, 35:14
**18** [1] - 14:20
**18-A** [4] - 60:21, 61:10, 61:11, 67:2
**18-B** [2] - 61:21, 67:3
**18th** [1] - 3:24
**19** [5] - 1:10, 61:6, 67:18, 78:7
**1981** [1] - 2:13
**1A112898Q** [1] - 39:10

## 2

**2** [6] - 14:17, 15:17, 15:24, 36:8, 36:15, 37:19
**20** [1] - 73:23
**2003** [1] - 30:17
**2006** [1] - 23:17
**2012** [1] - 19:4
**2013** [3] - 19:7, 19:8, 30:17
**2016** [6] - 19:25, 21:3, 26:3, 32:5, 34:24, 35:12
**2017** [32] - 25:6, 31:9, 34:17, 38:17, 40:18,

40:22, 41:11, 41:18, 43:13, 44:9, 44:24, 45:4, 45:21, 46:25, 47:3, 50:19, 51:16, 53:5, 55:6, 55:10, 55:25, 58:21, 59:3, 60:20, 60:21, 61:3, 61:4, 62:21, 62:24, 63:5, 67:8, 67:13
**2018** [2] - 68:6, 69:5
**2019** [5] - 1:10, 3:24, 6:14, 78:7, 78:12
**21** [12] - 40:22, 41:11, 41:18, 43:13, 44:9, 44:23, 45:4, 45:21, 46:25, 47:3, 53:5, 55:5
**21201** [1] - 1:24
**21st** [4] - 40:18, 50:19, 51:16, 62:24
**24** [2] - 60:19, 62:21
**25** [8] - 56:19, 57:2, 57:7, 57:11, 57:19, 57:22, 61:4, 67:13
**26** [3] - 58:21, 65:15, 68:4
**28** [1] - 19:25
**29** [4] - 21:3, 32:5, 34:24, 35:12
**29th** [1] - 26:3
**2:00** [1] - 2:2
**2:20** [1] - 10:14
**2:22** [1] - 48:15

## 3

**3** [2] - 14:16, 38:12
**3/21/2017** [1] - 44:16
**30** [1] - 77:6
**30-A** [1] - 7:8
**30-B** [1] - 7:8
**30-C** [1] - 7:8
**30-D** [1] - 7:8
**30-E** [1] - 7:8
**30-F** [1] - 7:8
**30-G** [1] - 7:8
**33-F** [1] - 7:9
**33-G** [1] - 7:9
**33-H** [1] - 7:9
**37** [1] - 2:11
**3:28** [1] - 52:6
**3:40** [1] - 52:6
**3:47** [1] - 52:9

## 4

**4** [3] - 14:16, 38:19, 59:3
**41(g** [2] - 72:17, 72:18
**46** [1] - 9:17

**49** [1] - 9:17
**4:26** [1] - 72:4
**4:34** [1] - 76:5

## 5

**5** [9] - 9:4, 14:16, 41:2, 41:14, 42:4, 43:1, 43:12, 44:8, 44:18
**51** [1] - 9:19

## 6

**6** [2] - 14:16, 44:12
**60** [1] - 9:20
**615** [1] - 3:6

## 7

**7** [16] - 15:25, 24:15, 24:16, 46:21, 47:13, 47:19, 47:25, 48:16, 49:13, 50:1, 51:3, 51:6, 68:6, 73:12, 73:13, 74:5

## 8

**8** [7] - 15:25, 24:15, 24:19, 50:14, 51:10, 60:21, 73:3
**89** [1] - 9:5
**8th** [1] - 67:8

## 9

**9** [9] - 8:8, 8:9, 8:12, 16:13, 16:14, 25:5, 51:13, 69:5
**93** [1] - 9:6
**990004495000428** [1] - 37:12
**9th** [1] - 69:17

## A

**Abingdon** [4] - 19:11, 27:15, 55:23, 56:23
**able** [9] - 6:18, 18:7, 22:20, 23:16, 32:13, 66:15, 71:18, 71:19, 74:25
**absolutely** [1] - 6:12
**abuse** [13] - 19:25, 20:3, 20:5, 20:6, 21:14, 21:23, 22:8, 22:15, 22:20, 27:15, 73:6, 74:6,

74:15
**abused** [4] - 19:14, 20:3, 20:19, 21:10
**abuser** [1] - 22:5
**abuser's** [1] - 21:16
**abusing** [1] - 25:1
**accept** [3] - 5:19, 12:13, 13:19
**accepted** [1] - 5:5
**accessed** [3] - 16:3, 24:18, 24:20
**accomplish** [3] - 15:22, 15:23, 24:7
**accuracy** [1] - 61:22
**accurate** [3] - 60:18, 61:17, 78:10
**accusation** [1] - 14:2
**Act** [2] - 2:21, 3:15
**act** [2] - 15:21, 24:6
**acted** [1] - 16:18
**acts** [2] - 23:19, 32:12
**actual** [5] - 5:6, 15:7, 16:11, 37:10, 62:7
**add** [2] - 6:24, 7:21
**addition** [2] - 39:14, 45:9
**additional** [3] - 8:20, 21:11, 41:14
**additionally** [1] - 73:20
**address** [13] - 8:25, 21:4, 29:12, 48:2, 50:19, 51:17, 55:20, 55:22, 55:25, 56:2, 68:8, 68:11, 74:12
**addresses** [2] - 27:8, 64:6
**admission** [1] - 8:24
**admit** [1] - 8:13
**admitted** [2] - 11:12, 12:2
**admitting** [2] - 8:8, 8:14
**adopted** [3] - 19:9, 20:3, 27:14
**adoption** [1] - 27:2
**adult** [3] - 25:1, 33:12, 68:18
**adults** [1] - 15:8
**Advocacy** [1] - 31:21
**affecting** [2] - 16:5, 16:6
**affirmatively** [1] - 6:19
**affixed** [1] - 78:11
**Afternoon** [1] - 2:2
**afternoon** [5] - 19:3, 28:12, 30:9, 48:15, 52:4
**afterwards** [1] - 69:18
**age** [2] - 2:10, 14:20
**Agent** [10] - 22:10, 22:19, 23:1, 25:15, 29:18, 30:14, 55:14,

61:9, 62:18, 70:20
**agent** [3] - 25:19, 52:13, 53:4
**AGENT** [2] - 29:22, 77:5
**ago** [4] - 4:24, 25:25, 36:12, 38:20
**agree** [1] - 11:5, 11:13
**agreed** [3] - 6:7, 55:3, 60:12
**agreement** [1] - 55:1
**Alisha** [9] - 19:5, 19:6, 19:12, 19:19, 20:1, 21:2, 25:18, 26:25
**allegations** [1] - 31:15
**allegedly** [1] - 73:4
**allow** [1] - 5:15
**allowing** [1] - 6:21
**almost** [1] - 73:8
**alone** [3] - 27:5, 27:16, 32:13
**alongside** [1] - 29:8
**alphabet** [2] - 65:12, 65:13
**altered** [3] - 4:9, 61:2, 61:7
**Amendment** [1] - 5:16
**America** [2] - 55:4, 60:13
**AMERICA** [1] - 1:4
**Analyst** [1] - 25:17
**analyst** [1] - 26:9
**angle** [6] - 44:8, 47:16, 50:1, 51:9, 70:4, 70:7
**answer** [3] - 11:24, 17:16, 71:24
**answered** [1] - 17:15
**anticipated** [1] - 75:14
**apartment** [1] - 23:2
**appearance** [5] - 25:7, 59:8, 59:10, 59:12
**Appearances** [1] - 1:15
**appeared** [2] - 42:19, 63:6
**appellate** [1] - 5:16
**applied** [2] - 28:5, 34:10
**apply** [2] - 11:4, 72:19
**applying** [1] - 13:21
**appointed** [1] - 4:3
**approach** [1] - 35:6
**appropriate** [3] - 3:6, 4:15, 6:16
**April** [3] - 55:10, 55:25, 58:21
**area** [3] - 15:11, 15:13, 39:3
**argument** [2] - 7:14, 18:15
**arguments** [2] - 11:16, 72:11

arm [1] - 54:13
arraignment [1] - 2:5
arrest [1] - 55:7
arrested [3] - 41:17, 53:5, 53:8
arriving [1] - 14:8
arrows [1] - 65:9
Asian [1] - 54:13
asleep [2] - 25:13, 66:9
assignment [1] - 30:18
assist [1] - 62:8
associated [9] - 35:20, 37:2, 37:4, 39:5, 46:11, 46:14, 48:1, 65:13, 68:3
assume [2] - 4:2, 70:24
assumption [1] - 8:10
attempt [4] - 9:19, 15:17, 15:18, 15:24
attempted [3] - 16:17, 23:7, 24:2
attention [21] - 17:14, 18:9, 34:8, 36:19, 36:25, 37:13, 39:3, 43:7, 43:18, 50:11, 55:17, 58:20, 59:3, 63:4, 63:22, 64:8, 65:3, 67:12, 68:6, 72:1
attorneys [3] - 18:21, 55:4, 60:13
attract [1] - 15:11
authorize [1] - 68:13
authorized [2] - 34:13, 39:16
available [1] - 71:11
aware [1] - 72:23

B

background [7] - 12:8, 21:21, 22:20, 27:4, 33:2, 34:2, 56:3
backwards [1] - 65:15
bad [1] - 75:21
bag [1] - 60:25
bags [4] - 49:20, 49:23
Baltimore [1] - 1:11, 1:24, 59:7
band [6] - 23:3, 24:13, 69:16, 70:1, 70:4, 70:7, 70:9, 70:10
bare [1] - 22:13
based [8] - 3:7, 3:11, 11:2, 13:2, 13:9, 17:4, 20:24
basic [2] - 13:24, 16:21
basis [4] - 3:15, 3:21, 8:7, 32:8
bathroom [1] - 20:13
became [2] - 19:9, 19:21

become [1] - 19:13
bed [2] - 42:12
bedding [6] - 21:6, 22:2, 26:5, 27:6, 27:8
bedroom [10] - 22:22, 25:23, 27:4, 42:11, 43:5, 56:13, 57:5, 57:10, 57:17, 58:13
begin [8] - 18:10, 75:15
Behalf [2] - 1:16, 1:18
behalf [1] - 28:25
belonged [1] - 27:24
belongings [2] - 45:24, 48:23
below [2] - 54:5, 60:17
bench [3] - 70:20, 70:22, 71:7
between [11] - 15:8, 16:25, 47:11, 52:4, 54:4, 54:24, 55:1, 55:4, 60:13, 73:5, 73:21
beyond [4] - 14:11, 14:18, 20:15, 23:11
bit [6] - 18:13, 39:8, 55:17, 56:18, 58:20, 68:5
blades [1] - 54:5
Blake [4] - 1:12, 20:9, 23:5, 24:3
blanket [4] - 22:3, 22:4, 26:5, 27:7
blue [11] - 21:20, 22:6, 22:18, 25:21, 27:11, 27:17, 28:16, 45:10, 45:12, 50:1, 54:6
booked [1] - 53:9
booking [4] - 53:18, 54:17, 55:6, 55:14
born [2] - 2:12, 23:17
bottom [5] - 21:19, 22:14, 25:21, 43:18, 45:3
box [1] - 18:1
boys [2] - 64:12, 66:15
break [2] - 48:11, 52:1
breaking [1] - 51:25
Bridge [6] - 22:17, 46:11, 46:12, 47:15, 68:9, 69:8
brief [6] - 9:15, 9:16, 9:23, 10:23, 24:3, 26:2
briefing [1] - 72:12
briefly [2] - 14:13, 29:12
bright [1] - 13:5
bring [6] - 9:14, 10:6, 15:22, 24:7, 52:7, 75:7
brings [1] - 15:10
brought [3] - 14:1, 25:7, 59:7
BUDLOW [2] - 2:23, 52:8
budlow [1] - 1:17

building [4] - 46:17, 47:5, 47:9, 48:6
bulb [2] - 22:25, 58:5
bulbs [1] - 58:12
burden [2] - 7:16, 14:4
burn [1] - 66:1
BY [6] - 30:6, 52:12, 55:13, 61:8, 62:17, 77:6

C

camera [1] - 24:10
cameras [1] - 45:8
capture [1] - 24:10
card [17] - 21:11, 23:25, 26:11, 35:20, 35:23, 35:25, 36:1, 36:3, 37:18, 37:23, 37:24, 37:25, 38:2, 38:4, 69:3, 69:4, 70:11
cards [1] - 72:22
carefully [2] - 23:19, 23:21
Carroll [20] - 31:21, 32:2, 54:15, 54:21, 55:6, 55:8, 55:12, 55:15, 59:6, 59:13, 59:18, 59:25, 60:7, 60:15, 60:23, 61:5, 61:12, 63:1, 66:24, 67:14
Case [1] - 78:7
CASE [1] - 1:5
case [49] - 3:5, 4:14, 4:20, 4:21, 5:1, 5:3, 6:3, 6:16, 7:24, 8:21, 9:22, 9:23, 10:19, 10:25, 11:3, 13:15, 13:20, 13:22, 14:5, 14:12, 14:14, 16:23, 17:1, 17:4, 17:6, 18:13, 18:18, 20:2, 20:4, 20:10, 20:22, 23:6, 26:12, 27:14, 28:8, 28:15, 28:18, 28:21, 29:1, 30:25, 32:6, 55:2, 59:4, 71:15, 71:17, 72:3
cases [9] - 3:23, 4:14, 6:13, 30:20, 30:23, 30:25, 31:2, 31:3, 31:4
Catherine [1] - 1:12
caused [1] - 56:14
CCB-17-226 [2] - 1:6, 78:7
ceiling [2] - 56:15, 58:1
cell [13] - 34:23, 35:11, 35:21, 36:11, 36:18, 37:2, 37:4, 45:8, 52:16, 56:14, 60:4, 61:6, 67:23
cellular [1] - 56:14
center [5] - 44:4, 47:11, 48:23, 54:6

Center [22] - 31:21, 53:10, 54:15, 54:21, 55:7, 55:9, 55:12, 55:15, 59:7, 59:13, 59:18, 59:21, 59:25, 60:3, 60:7, 60:15, 60:23, 61:5, 61:13, 63:1, 66:24, 67:15
certain [7] - 4:13, 11:15, 12:3, 13:2, 13:13, 27:18, 62:25
certainly [6] - 4:10, 6:14, 35:7, 71:21, 75:13, 75:19
CERTIFICATE [1] - 78:3
certify [2] - 78:5, 78:8
challenging [1] - 29:3
chambers [2] - 5:25, 75:19
chance [1] - 18:22
change [1] - 2:23
changes [1] - 8:5
charge [4] - 8:8, 14:17, 23:13, 24:4
charged [4] - 16:15, 24:14, 25:6, 28:1
charges [9] - 14:1, 14:12, 14:15, 23:5, 23:11, 28:7, 58:25, 59:8, 59:14
check [1] - 54:20
checked [3] - 54:17, 55:7, 61:21
Chief [2] - 6:17, 75:24
child [55] - 4:2, 5:22, 6:3, 14:17, 15:17, 15:20, 16:1, 16:2, 16:8, 20:6, 20:8, 20:13, 20:18, 23:7, 23:8, 23:9, 23:12, 24:2, 24:5, 24:14, 24:17, 24:19, 24:23, 25:3, 26:6, 26:12, 26:13, 26:19, 26:20, 26:23, 27:19, 27:21, 30:20, 30:22, 31:1, 31:12, 31:15, 32:7, 33:5, 33:8, 33:23, 33:24, 34:1, 40:10, 44:25, 50:21, 56:6, 58:17, 58:24, 59:9, 73:5, 74:5, 74:13
child's [1] - 15:13
children [3] - 15:8, 15:11, 20:19
China [7] - 23:24, 23:25, 24:1, 36:24, 38:5, 38:7, 39:13
choice [1] - 14:9
choose [1] - 18:17
chose [2] - 3:16, 5:18
circle [1] - 43:22
circumstances [2] -

3:17, 75:3
circumstantial [5] - 7:21, 12:22, 13:1, 13:12, 13:14
cited [1] - 6:13
City [1] - 25:17
clear [9] - 3:3, 4:7, 4:11, 5:6, 7:6, 8:24, 9:3, 12:19, 16:24
clearly [3] - 4:4, 74:7, 74:14
Clerk [1] - 75:24
CLERK [11] - 2:7, 2:10, 2:12, 2:14, 2:17, 10:18, 10:21, 29:19, 29:21, 29:24, 30:4
clients [1] - 11:19
close [5] - 23:21, 50:11, 75:7, 75:10, 75:22
close-up [1] - 23:21
closed [1] - 75:17
closet [1] - 42:22
closing [1] - 21:18
closure [1] - 75:3
clothes [1] - 22:12
clothing [12] - 21:17, 32:18, 34:2, 34:5, 40:8, 40:9, 42:22, 42:23, 49:9, 49:20, 50:13, 50:23
code [1] - 67:21
coded [4] - 8:7, 8:9, 25:9, 25:10, 25:25, 66:25, 67:10, 67:21
coerced [1] - 14:22
collared [4] - 33:15, 40:5, 49:7, 51:5
colleague [1] - 28:14
Collins [1] - 75:24
color [9] - 32:24, 33:16, 40:6, 45:3, 49:8, 54:6, 54:8, 70:1
colored [2] - 32:22, 33:13, 33:14, 40:5, 40:6, 49:6, 49:16, 51:5
comforter [3] - 21:7, 22:3, 27:6
commences [1] - 2:2
commerce [3] - 15:2, 16:5, 16:7
commit [3] - 15:17, 15:19, 24:4
common [3] - 13:21, 20:25, 28:6
commute [1] - 75:9
compare [7] - 44:24, 50:20, 51:21, 58:16, 68:17, 70:9, 70:11
complete [1] - 78:10
computer [4] - 7:19, 21:8, 24:18, 26:9

**Computer** [1] - 25:17
**concern** [2] - 6:1, 71:23
**concerned** [1] - 68:20
**concerning** [1] - 45:23
**conclude** [3] - 13:3, 13:10, 13:13
**conclusion** [4] - 12:11, 16:23, 29:13, 76:5
**conditional** [1] - 5:15
**conduct** [8] - 9:18, 14:23, 14:24, 15:3, 15:7, 16:12, 17:3, 20:10
**conducted** [1] - 59:22
**conference** [3] - 4:25, 70:22, 71:7
**confiscated** [1] - 60:4
**connect** [1] - 3:10
**connection** [11] - 8:21, 25:20, 31:23, 31:24, 33:7, 40:24, 45:4, 55:18, 55:24, 59:20, 68:16
**consider** [7] - 11:14, 12:14, 13:14, 14:8, 15:15, 23:6, 55:2
**considered** [2] - 17:20, 32:23
**constitute** [1] - 78:8
**constitutes** [1] - 15:13
**consult** [1] - 75:14
**contact** [3] - 59:18, 66:5, 67:14
**contacted** [1] - 67:11
**contain** [1] - 61:11
**contents** [2] - 68:20, 68:22
**contesting** [1] - 29:1
**continue** [4] - 52:11, 59:15, 66:4, 72:3
**continued** [1] - 22:19
**control** [2] - 17:2, 17:19
**controls** [1] - 62:10
**conversation** [11] - 8:16, 8:22, 45:22, 46:3, 46:8, 60:17, 62:20, 62:21, 67:7
**conversations** [3] - 6:1, 61:11, 62:2
**convincing** [1] - 4:8
**copied** [1] - 61:2
**copies** [2] - 61:25, 62:25
**copy** [4] - 60:24, 63:5, 63:9, 63:17
**correct** [41] - 5:23, 6:14, 33:6, 34:19, 34:25, 35:15, 36:6, 37:25, 38:10, 39:11, 39:20, 41:22, 42:16, 43:6, 43:15, 44:2, 44:10, 44:20, 45:11, 45:17,

46:16, 47:1, 47:4, 47:7, 47:18, 48:5, 48:8, 49:11, 50:3, 51:11, 52:21, 53:6, 53:19, 57:18, 57:21, 59:2, 63:3, 69:1, 70:5, 71:1, 73:11
**correspondence** [1] - 59:22
**corruptly** [1] - 16:16
**counsel** [11] - 5:23, 14:13, 16:22, 17:10, 17:15, 18:12, 18:17, 18:25, 28:14, 70:20, 71:12
**Count** [13] - 8:8, 8:9, 8:12, 14:17, 15:17, 15:24, 16:13, 16:14, 25:5, 73:12, 73:13, 74:5
**count** [6] - 16:14, 23:7, 23:9, 24:16, 24:19, 73:2
**Counts** [3] - 2:15, 24:14, 73:3
**counts** [9] - 14:14, 14:15, 14:16, 15:25, 23:6, 23:8, 28:10, 73:10
**County** [20] - 31:21, 32:2, 54:15, 54:21, 55:6, 55:8, 55:12, 55:15, 59:6, 59:13, 59:18, 59:25, 60:7, 60:15, 60:23, 61:5, 61:12, 63:1, 66:24, 67:14
**county** [1] - 53:9
**couple** [2] - 13:6, 17:25
**course** [9] - 6:8, 6:10, 6:16, 8:5, 11:6, 17:17, 29:7, 73:22, 74:14
**court** [11] - 12:5, 18:4, 18:6, 25:7, 59:12, 71:19, 71:22, 74:25, 75:3, 75:13, 75:22
**COURT** [53] - 1:1, 2:3, 2:18, 3:1, 3:22, 5:6, 5:10, 5:18, 5:21, 7:1, 7:12, 9:10, 9:13, 10:2, 10:4, 10:6, 10:10, 10:13, 10:15, 10:22, 20:16, 28:11, 29:16, 35:7, 51:24, 52:3, 52:7, 52:10, 54:25, 60:11, 62:1, 62:4, 62:13, 62:15, 70:15, 70:17, 70:19, 70:23, 71:2, 71:8, 72:5, 72:13, 72:15, 73:1, 73:8, 73:13, 73:18, 74:22, 74:24, 75:4, 75:12, 76:2, 76:4
**Court** [5] - 4:25, 75:7, 75:10, 75:16, 78:17
**courthouse** [2] - 17:22, 25:8
**Courthouse** [1] - 1:23,

59:7
**courtroom** [10] - 2:25, 3:13, 3:19, 10:14, 12:18, 17:5, 17:23, 52:9, 72:4
**cover** [5] - 36:18, 52:16, 52:23, 74:4, 74:13
**cover's** [1] - 52:16
**covered** [5] - 34:20, 35:1, 46:24, 52:19, 74:7
**covering** [1] - 48:24
**coworkers** [1] - 13:7
**created** [4] - 20:5, 22:24, 26:15, 56:16
**credibility** [1] - 13:20
**crime** [5] - 15:19, 15:23, 15:24, 24:5, 24:7
**Crime** [2] - 2:21, 3:14
**criminal** [1] - 13:22
**CRIMINAL** [1] - 1:5
**cross** [2] - 18:17, 54:5
**cumulative** [1] - 9:8
**current** [1] - 30:18
**cursor** [1] - 43:25
**curtains** [1] - 34:3

# D

**dark** [12] - 21:20, 32:22, 33:13, 33:14, 33:16, 40:5, 40:6, 49:6, 49:8, 49:16, 50:1, 51:5
**dark-colored** [3] - 40:5, 40:6, 49:6
**date** [5] - 16:15, 60:19, 60:21, 61:1, 61:3
**dated** [1] - 3:24
**dates** [1] - 26:15
**dating** [1] - 19:5
**daughter** [4] - 19:5, 19:9, 20:3, 27:15
**days** [2] - 17:25, 28:20
**December** [1] - 19:18
**decide** [7] - 11:2, 11:9, 12:13, 13:3, 13:17, 17:4, 75:22
**decision** [2] - 75:12, 75:23
**decoded** [2] - 65:16, 65:20
**DEFENDANT** [4] - 2:9, 2:11, 2:13, 2:16
**defendant** [56] - 7:2, 7:18, 8:11, 13:25, 14:2, 14:5, 14:7, 14:21, 15:19, 15:21, 16:3, 16:9, 16:16, 16:18, 18:18, 19:4, 19:8, 19:14, 19:15, 19:16, 19:17, 19:19, 19:22, 20:24, 23:15, 23:18,

23:20, 24:4, 24:6, 24:8, 24:22, 25:2, 25:6, 26:18, 27:1, 27:5, 27:16, 27:24, 28:2, 28:6, 28:10, 28:15, 31:20, 41:17, 53:4, 54:20, 55:5, 55:14, 55:20, 59:15, 60:14, 60:16, 61:1, 61:12, 73:14
**Defendant** [2] - 1:7, 1:18
**defendant's** [22] - 7:2, 14:11, 19:7, 22:11, 22:17, 23:2, 23:3, 23:21, 24:12, 24:18, 25:18, 25:24, 26:3, 27:2, 27:10, 27:14, 27:17, 45:23, 55:7, 55:11, 60:4, 61:6
**defense** [10] - 3:1, 4:7, 4:10, 6:4, 6:5, 7:4, 18:11, 18:16, 72:7, 72:18
**defined** [1] - 16:9
**definition** [2] - 9:17, 15:16
**delay** [1] - 74:9
**delete** [1] - 24:24
**deliberate** [3] - 17:21, 17:24, 18:23
**deliberating** [1] - 17:19
**deliberations** [1] - 18:3
**deny** [2] - 8:2, 73:18
**Department** [5] - 25:17, 30:15, 54:21, 55:8, 55:12
**depicting** [1] - 68:18
**depiction** [9] - 14:24, 14:25, 15:10, 16:3, 16:4, 16:8, 16:11, 24:17, 24:19
**depressed** [1] - 66:21
**describe** [5] - 32:17, 32:20, 42:9, 42:17, 48:21, 49:18, 52:15, 65:6, 69:24
**described** [1] - 15:20
**description** [1] - 15:4
**deserves** [1] - 12:16
**detained** [2] - 25:8, 61:12
**Detective** [2] - 25:16, 67:12
**detective** [1] - 26:1
**Detention** [21] - 53:10, 54:15, 54:21, 55:6, 55:8, 55:12, 55:15, 59:6, 59:13, 59:18, 59:21, 59:25, 60:3, 60:7, 60:15, 60:23, 61:5, 61:12, 63:1, 66:24, 67:15
**device** [1] - 36:5
**devices** [8] - 26:10, 27:24, 34:20, 34:24, 39:15, 40:7, 72:21, 74:2

**difference** [1] - 16:25
**different** [5] - 2:1, 7:25, 9:21, 14:15, 62:10
**difficult** [2] - 28:18, 71:9
**Dire** [2] - 2:1
**DIRECT** [2] - 30:5, 77:6
**direct** [16] - 12:22, 13:14, 36:19, 43:18, 50:10, 55:17, 58:20, 59:3, 63:4, 63:22, 64:8, 65:3, 67:12, 68:5, 69:5
**directing** [4] - 36:25, 37:13, 39:3, 43:7
**directly** [1] - 29:24
**disagree** [1] - 20:16
**discover** [2] - 49:3, 56:11
**discovered** [5] - 21:9, 31:12, 50:8, 56:13, 68:25
**discovery** [2] - 25:22, 26:11
**discuss** [4] - 5:11, 17:6, 17:12, 71:12
**discussed** [4] - 2:21, 4:25, 5:24, 66:25
**discusses** [1] - 8:15
**discussing** [1] - 74:18
**discussion** [1] - 9:4
**discussions** [3] - 4:18, 4:21, 5:2
**dispassionately** [1] - 20:24
**displayed** [1] - 52:19
**displays** [1] - 15:10
**disposition** [1] - 5:2
**disputing** [1] - 28:25
**disregarded** [2] - 12:4, 12:20
**distance** [1] - 71:20
**distinct** [6] - 21:18, 21:21, 22:8, 22:22, 25:23, 27:3
**distinctions** [1] - 73:21
**distinguish** [1] - 73:5
**DISTRICT** [2] - 1:1, 1:1
**District** [2] - 23:24, 34:11
**DIVISION** [1] - 1:2
**DL** [1] - 44:22
**document** [1] - 65:20
**documents** [1] - 11:11
**Doe** [4] - 14:20, 14:22, 16:17, 16:19
**done** [2] - 18:18, 62:1
**door** [2] - 47:10, 48:9
**doors** [1] - 47:11
**dot** [5] - 21:7, 22:3, 26:5, 27:6, 65:8
**dots** [1] - 3:10

**doubt** [4] - 14:11, 14:19, 23:11, 28:6
**down** [5] - 17:13, 43:7, 43:18, 65:8, 70:20
**drawer** [1] - 43:4
**drawers** [1] - 42:22
**drawstring** [11] - 21:20, 22:7, 22:18, 25:22, 27:12, 32:23, 33:15, 40:5, 49:6, 49:7, 49:17
**dresser** [3] - 42:11, 43:4
**dressers** [1] - 22:12
**dripping** [2] - 13:7, 13:8
**driving** [1] - 71:20
**duffel** [1] - 49:23
**during** [16] - 2:25, 3:13, 8:22, 11:6, 17:17, 20:22, 23:2, 23:10, 25:8, 26:16, 29:7, 41:23, 49:2, 50:24, 54:17, 55:6

**E**

**ear** [1] - 66:6
**early** [3] - 4:21, 31:24, 75:24
**easy** [1] - 28:21
**ECF** [2] - 9:5, 9:6
**edges** [1] - 70:2
**effect** [14] - 21:22, 22:9, 22:23, 25:23, 33:2, 56:4, 56:13, 56:17, 57:15, 57:16, 57:20, 58:2, 58:15, 58:17
**effects** [1] - 42:24
**effort** [2] - 15:22, 24:6
**eighth** [1] - 51:2
**either** [6] - 5:5, 9:18, 72:2, 72:8, 72:25, 75:1
**elect** [1] - 17:25
**electronic** [4] - 31:13, 40:7, 72:21, 74:1
**electronics** [1] - 45:5
**elements** [7] - 7:17, 9:16, 9:20, 16:21, 23:11, 23:13, 24:15
**Elizabeth** [1] - 1:18
**emails** [1] - 59:23
**Emminizer** [1] - 25:16
**Emminizer's** [1] - 26:1
**emotion** [1] - 20:24
**employed** [3] - 14:21, 30:9, 30:15
**enclose** [2] - 64:13, 64:15
**end** [16] - 9:22, 13:20, 14:5, 14:14, 15:4, 15:5, 17:1, 18:8, 20:9, 28:4,

28:8, 66:17, 71:7, 71:11
**enforcement** [11] - 21:3, 22:6, 41:24, 45:5, 48:13, 49:2, 49:9, 61:4, 67:11, 68:13, 68:25
**engaged** [6] - 16:11, 20:10, 23:19, 32:12, 60:14, 60:16
**engines** [1] - 26:23
**entered** [2] - 26:22, 40:21
**enters** [2] - 10:14, 52:9
**enticed** [1] - 14:21
**entire** [1] - 75:13
**entitled** [1] - 4:7
**entity** [1] - 31:17
**entrance** [1] - 57:5
**envelope** [1] - 63:17
**equally** [1] - 3:18
**equipment** [1] - 31:13
**Eric** [25] - 2:9, 19:4, 28:15, 31:6, 39:22, 46:6, 53:17, 53:24, 54:4, 55:5, 58:23, 59:6, 59:22, 60:14, 62:19, 63:9, 63:17, 63:20, 64:6, 67:6, 67:23, 68:14, 68:15, 78:6
**ERIC** [1] - 1:6
**Esquire** [4] - 1:16, 1:17, 1:18, 1:19
**essentially** [6] - 3:10, 6:5, 8:10, 9:8, 13:20, 15:3
**establish** [1] - 23:10
**etched** [2] - 56:16, 58:2
**evaluate** [1] - 20:23
**event** [1] - 12:24
**eventually** [1] - 21:10
**evidence** [61] - 4:8, 4:17, 6:11, 7:16, 7:21, 8:6, 9:9, 11:2, 11:9, 11:14, 11:15, 11:20, 11:21, 12:1, 12:19, 12:21, 12:22, 13:1, 13:12, 13:15, 14:6, 17:4, 17:8, 17:9, 18:12, 18:14, 18:15, 18:20, 18:21, 18:23, 20:15, 20:23, 20:25, 23:10, 23:14, 23:18, 23:20, 23:22, 24:8, 25:10, 26:3, 27:13, 28:5, 28:21, 28:24, 29:1, 29:13, 55:2, 62:6, 62:11, 69:17, 69:18, 71:11, 72:20, 72:24, 73:2, 73:6, 73:24, 74:6, 74:15
**Evidence** [1] - 3:7
**evidentiary** [2] - 41:24, 49:3
**ex** [1] - 25:18

**ex-wife** [1] - 25:18
**exact** [1] - 24:25
**exactly** [2] - 7:24, 71:9
**EXAMINATION** [2] - 30:5, 77:6
**examination** [1] - 26:10
**examine** [2] - 18:17, 21:10
**examined** [1] - 21:8
**examiner** [2] - 21:9
**example** [2] - 7:18, 13:4
**excellent** [1] - 18:6
**except** [1] - 14:17
**exceptions** [1] - 12:7
**excerpts** [2] - 61:11, 61:15
**excite** [1] - 15:12
**exclude** [2] - 3:7, 3:20
**excluding** [1] - 8:20
**excuse** [4] - 6:18, 64:14, 71:4, 71:13
**execute** [3] - 40:19, 48:13, 62:22
**executed** [7] - 21:3, 22:16, 40:14, 41:20, 46:24, 69:7, 69:10
**execution** [2] - 23:2, 50:24
**exhibit** [2] - 35:5, 61:3
**Exhibit** [64] - 9:4, 9:5, 35:8, 35:17, 36:8, 36:15, 37:11, 37:19, 38:12, 38:19, 41:2, 41:14, 42:3, 43:1, 43:12, 44:8, 44:12, 44:17, 46:21, 47:13, 47:19, 47:24, 48:16, 49:13, 49:25, 50:14, 51:2, 51:6, 51:13, 52:14, 53:14, 53:20, 53:25, 54:9, 56:19, 57:1, 57:6, 57:11, 57:19, 57:22, 60:19, 60:21, 61:5, 61:6, 61:21, 62:12, 63:14, 63:21, 64:9, 64:17, 64:19, 64:25, 65:4, 65:20, 65:23, 67:2, 67:3, 67:18, 69:13, 69:20, 69:21, 69:25, 70:3, 70:6
**exhibition** [2] - 15:9, 15:14
**exhibits** [4] - 7:7, 9:3, 11:12, 61:25
**Exhibits** [2] - 61:9, 61:10
**exist** [2] - 13:3, 13:14
**exits** [1] - 72:4
**expect** [4] - 9:24, 18:13, 18:14, 29:4
**expected** [1] - 3:10
**experience** [2] - 12:9,

12:15
**expert** [2] - 12:12, 12:15
**expertise** [1] - 12:9
**experts** [1] - 13:16
**explain** [1] - 67:25
**explicit** [7] - 9:18, 14:22, 15:3, 15:7, 16:10, 16:12, 20:10
**explicitly** [1] - 25:3
**exploitation** [4] - 26:24, 30:20, 30:22, 31:1
**exposed** [1] - 6:2
**exposure** [1] - 15:13
**express** [2] - 12:6, 12:10
**extended** [1] - 4:22
**extra** [1] - 18:2
**extremely** [2] - 9:15, 28:18
**eyewitness** [1] - 12:23

**F**

**F-E-D-E-R-I-C-O** [1] - 30:3
**face** [3] - 21:16, 22:2, 33:12
**fact** [3] - 7:20, 7:22, 8:18
**facts** [9] - 11:3, 11:5, 11:10, 13:2, 13:3, 13:13, 13:14
**factual** [1] - 72:16
**failed** [1] - 24:9
**fair** [21] - 31:14, 39:4, 40:11, 41:17, 42:15, 44:5, 44:18, 45:9, 48:9, 49:10, 51:10, 52:23, 54:18, 56:24, 57:16, 57:20, 58:5, 61:10, 65:1, 70:4, 70:7
**fairly** [2] - 9:23
**family** [2] - 19:10, 20:12
**fan** [4] - 22:24, 56:14, 56:15, 58:1
**fans** [2] - 58:10, 58:12
**far** [1] - 72:2
**fashion** [2] - 5:23, 73:25
**faster** [1] - 70:23
**father** [1] - 64:12
**father/daughter** [2] - 26:21, 27:22
**FCRR** [1] - 1:23
**February** [5] - 1:10, 3:24, 6:14, 7:4, 78:7
**Federal** [1] - 3:7
**Federal** [22] - 5:3, 16:19, 31:5, 32:6, 32:8, 33:23, 34:10, 34:13, 35:1,

35:13, 39:16, 40:14, 58:25, 59:1, 59:4, 59:8, 59:14, 62:22, 68:8, 68:16, 72:18, 74:9
**federally** [2] - 25:6, 28:2
**FEDERICO** [2] - 29:22, 77:5
**Federico** [13] - 22:10, 22:19, 23:1, 25:15, 25:19, 29:18, 30:2, 52:13, 53:4, 55:14, 61:9, 62:18, 67:12
**fellow** [1] - 17:13
**felony** [1] - 6:17
**felt** [1] - 6:10
**female** [2] - 32:12, 32:13
**few** [3] - 2:3, 13:23, 28:20
**field** [1] - 12:9
**fifth** [5] - 42:25, 48:16, 57:19, 64:24, 66:19
**figure** [2] - 22:5, 22:7
**figured** [1] - 22:1
**file** [1] - 26:19
**file-sharing** [1] - 26:19
**filed** [2] - 2:1, 72:12
**files** [1] - 25:3
**film** [2] - 24:8, 24:10
**filmed** [7] - 19:14, 19:16, 19:17, 19:18, 19:23, 20:3, 23:20
**finally** [7] - 16:13, 23:22, 26:18, 26:25, 27:10, 27:12, 28:1
**finger** [1] - 19:16
**finished** [1] - 29:14
**first** [32] - 8:15, 9:4, 10:16, 14:16, 14:19, 15:19, 16:15, 21:24, 24:4, 25:7, 29:16, 31:23, 32:1, 36:14, 37:1, 37:5, 37:6, 38:19, 41:2, 46:21, 53:14, 56:19, 62:4, 63:24, 65:6, 69:25, 74:3, 74:7, 74:12, 75:5
**five** [4] - 10:5, 19:6, 23:6, 30:24
**fixture** [1] - 56:15
**flicked** [1] - 22:22
**flips** [1] - 52:17
**Floor** [1] - 1:23
**focus** [1] - 26:21
**focused** [2] - 21:24, 26:23
**follow** [4] - 9:22, 11:5, 12:2, 12:4
**followed** [1] - 63:11
**following** [1] - 60:25
**follows** [2] - 55:5, 60:14

**FOR** [1] - 1:1
**forecast** [1] - 71:17
**forecasted** [1] - 75:6
**foregoing** [1] - 78:8
**foreign** [3] - 15:2, 16:5, 16:7
**Forensic** [1] - 25:17
**forensic** [3] - 21:8, 26:9, 26:10
**foreperson** [2] - 17:25, 18:2
**forever** [1] - 66:13
**form** [1] - 17:9
**formal** [2] - 4:20, 5:9
**formed** [1] - 32:7
**forms** [1] - 8:7
**forth** [2] - 3:10, 72:11
**forward** [1] - 6:19
**four** [2] - 25:15, 30:24
**fourth** [7] - 16:9, 42:3, 47:24, 54:9, 57:11, 64:24, 66:14
**Fourth** [2] - 1:23, 5:16
**frame** [1] - 24:13
**framed** [1] - 24:11
**fraud** [1] - 31:3
**Frederick** [1] - 30:21
**Frye** [1] - 4:15
**full** [4] - 15:4, 29:25, 48:25, 50:6
**function** [1] - 4:4
**furniture** [1] - 34:3

## G

**G900V** [2] - 36:22, 36:23
**gain** [1] - 66:6
**game** [1] - 8:23
**garage** [9] - 8:18, 22:17, 46:14, 46:17, 46:19, 48:14, 48:20, 49:21, 62:23
**garage/outbuilding** [3] - 46:10, 48:1, 48:4
**garbage** [1] - 49:23
**gather** [1] - 73:8
**GBH** [1] - 33:14
**gears** [1] - 55:17, 58:20, 68:5
**general** [3] - 6:15, 15:16, 42:17
**generally** [15] - 13:4, 31:10, 32:10, 32:20, 33:10, 33:23, 36:3, 37:1, 40:19, 42:10, 45:7, 48:21, 53:7, 53:9, 54:16
**genitals** [5] - 15:11, 15:13, 23:22, 24:10,

24:11
**gentlemen** [10] - 10:23, 20:2, 23:14, 27:13, 28:4, 28:13, 28:16, 52:3, 62:4, 71:8
**genuine** [1] - 71:23
**GHB** [3] - 33:13, 33:14, 40:7
**Gibson** [2] - 25:17, 26:8
**girl** [1] - 23:14
**girls** [1] - 25:1
**given** [2] - 2:22, 75:21
**glass** [3] - 22:24, 58:1, 58:5
**Government** [3] - 1:16, 48:16, 63:14
**government** [31] - 2:21, 3:15, 3:20, 3:24, 4:13, 4:16, 4:21, 5:13, 5:18, 6:7, 6:11, 6:13, 6:15, 6:22, 7:15, 9:24, 14:2, 14:4, 14:10, 14:18, 15:15, 15:18, 16:2, 16:14, 18:10, 18:16, 28:9, 28:23, 29:17, 35:5, 72:14
**GOVERNMENT** [1] - 77:4
**government's** [19] - 2:24, 3:5, 5:4, 7:4, 7:7, 7:14, 9:11, 9:16, 18:18, 28:25, 29:2, 29:3, 29:9, 29:13, 72:7, 72:16, 72:23, 73:14, 74:20
**GOVERNMENT'S** [1] - 29:22
**Government's** [58] - 35:16, 36:7, 36:15, 37:10, 37:19, 38:11, 38:19, 41:2, 41:13, 42:3, 42:25, 43:12, 44:8, 44:11, 44:17, 46:21, 47:13, 47:19, 47:24, 49:12, 49:25, 50:14, 51:2, 51:6, 51:12, 52:14, 53:13, 53:20, 53:25, 54:9, 56:19, 57:1, 57:6, 57:11, 57:19, 57:22, 61:5, 61:6, 61:9, 61:10, 61:21, 63:21, 64:9, 64:17, 64:19, 64:25, 65:4, 65:19, 65:23, 67:2, 67:3, 67:17, 69:13, 69:20, 69:21, 69:25, 70:3, 70:6
**grand** [2] - 58:23, 59:1
**gratification** [1] - 19:23
**gray** [3] - 37:14, 37:17, 39:3
**greenish** [1] - 54:8

**GRINDER** [1] - 1:6
**Grinder** [34] - 2:9, 2:14, 3:4, 3:19, 3:25, 5:14, 8:23, 9:6, 19:4, 25:18, 26:25, 28:15, 28:25, 29:1, 31:6, 39:22, 53:17, 53:18, 53:24, 55:5, 58:23, 59:6, 59:22, 60:14, 63:9, 63:17, 64:6, 67:6, 72:21, 73:4, 73:24, 74:5, 78:7
**Grinder's** [12] - 2:24, 8:15, 8:17, 8:19, 46:6, 46:7, 54:4, 62:19, 63:20, 67:23, 68:14, 68:15
**grooves** [1] - 70:1
**guardian** [1] - 4:5
**guess** [1] - 52:18
**guidelines** [1] - 13:19
**guilt** [2] - 14:3, 14:11
**guilty** [5] - 2:16, 5:14, 14:1, 28:7, 28:10

## H

**hallway** [1] - 57:5
**hand** [9] - 10:19, 24:12, 29:21, 36:20, 37:13, 43:7, 44:18, 47:16, 61:24
**happy** [2] - 52:1, 72:8
**hear** [20] - 9:22, 12:18, 14:13, 16:16, 16:22, 20:9, 23:10, 23:17, 24:22, 25:2, 25:5, 26:8, 26:18, 26:22, 26:25, 28:19, 29:9, 62:9, 62:10, 72:8
**heard** [8] - 7:5, 12:7, 12:17, 12:25, 17:8, 20:8, 28:4, 28:5
**hearing** [6] - 4:16, 20:21, 25:14, 29:6, 67:5, 72:25
**hears** [1] - 4:9
**help** [2] - 34:6, 37:7
**helpful** [1] - 12:10
**hereby** [5] - 55:3, 60:12, 78:5
**hereunto** [1] - 78:11
**herself** [1] - 3:16
**himself** [1] - 24:9
**holding** [2] - 13:7, 50:5
**holds** [1] - 36:4
**hole** [3] - 21:19, 44:3, 44:7
**holes** [6] - 22:14, 25:21, 27:11, 40:4, 43:21, 45:3
**Homeland** [7] - 21:15, 25:15, 26:8, 30:12,

30:16, 30:18
**Honor** [44] - 2:23, 3:3, 4:19, 4:24, 5:2, 5:8, 5:12, 5:20, 6:25, 7:6, 9:2, 9:12, 10:1, 10:3, 10:5, 10:9, 10:11, 19:2, 20:14, 28:12, 29:17, 35:6, 52:2, 52:8, 52:13, 54:23, 60:9, 61:24, 62:3, 62:14, 70:13, 70:14, 71:1, 72:10, 72:14, 72:23, 72:24, 73:7, 73:11, 74:21, 74:23, 75:2, 76:1, 76:3
**Honorable** [1] - 1:12
**HOPKINS** [1] - 7:6, 9:2
**Hopkins** [5] - 1:19, 10:4, 28:14, 29:7, 72:9
**horizontal** [4] - 33:16, 40:6, 49:8, 51:5
**horrors** [2] - 19:13, 19:22
**hours** [1] - 13:6
**house** [29] - 19:13, 19:14, 19:15, 19:16, 19:17, 19:20, 19:21, 19:22, 22:11, 22:12, 27:4, 35:2, 35:4, 40:21, 41:6, 41:8, 41:10, 41:21, 42:18, 45:5, 46:19, 47:14, 47:23, 56:12, 56:24
**housing** [6] - 22:24, 56:14, 56:15, 58:1, 58:4, 58:12
**HSI** [1] - 31:17

## I

**identical** [5] - 22:14, 23:4, 45:1, 50:22, 51:23
**identification** [1] - 61:20
**identified** [1] - 55:20
**identify** [5] - 22:20, 27:6, 27:10, 34:1, 34:6
**identifying** [2] - 34:2, 34:5
**identity** [3] - 22:5, 60:20, 60:21
**ignore** [1] - 11:23
**image** [4] - 14:24, 14:25, 33:1, 33:4
**images** [43] - 6:6, 6:9, 6:20, 6:22, 7:18, 7:22, 20:18, 20:22, 20:23, 21:12, 21:14, 21:16, 21:21, 22:2, 22:15, 22:23, 24:23, 26:6,

26:13, 26:15, 26:16, 27:18, 27:19, 27:23, 28:3, 32:7, 32:17, 33:1, 33:4, 33:21, 34:1, 40:10, 44:25, 50:21, 56:6, 58:17, 73:3, 73:9, 73:10, 73:12, 73:16, 74:13
**IMEI** [4] - 36:25, 37:1, 37:4, 37:11
**immigration** [1] - 31:4
**important** [2] - 17:7, 18:8
**improper** [1] - 11:21
**IN** [1] - 1:1
**inception** [1] - 30:17
**incest** [1] - 26:21
**included** [2] - 5:3, 21:21
**includes** [4] - 8:15, 11:16, 15:7, 15:9
**including** [3] - 7:18, 9:15, 21:6
**incorrect** [1] - 5:11
**independent** [1] - 17:5
**INDEX** [1] - 77:1
**indicate** [1] - 11:7
**indicated** [4] - 6:19, 13:16, 14:10, 61:2
**indictment** [5] - 2:15, 14:1, 14:16, 28:8, 58:23
**individual** [5] - 8:23, 17:20, 32:15, 32:18, 53:9
**induced** [1] - 14:21
**infer** [1] - 13:2
**influence** [2] - 16:19, 73:25
**influenced** [2] - 3:8, 11:22
**informal** [4] - 4:20, 4:22, 5:1
**information** [1] - 26:14
**initial** [2] - 59:8, 74:17
**initiate** [1] - 31:17
**inmates** [1] - 59:25
**inner** [2] - 24:11, 54:7
**innocent** [2] - 13:25, 14:6
**inside** [4] - 19:15, 48:20, 56:9, 56:12
**instantaneous** [1] - 18:6
**instead** [1] - 65:13
**Instruction** [1] - 9:17
**instruction** [4] - 9:21, 12:3, 12:4, 24:3
**instructions** [5] - 9:15, 10:24, 15:5, 17:1, 71:14
**intend** [1] - 15:19
**intended** [3] - 11:7, 24:4, 24:8

**intent** [1] - 16:18
**intercept** [1] - 60:24
**intercepted** [1] - 60:25
**intercourse** [1] - 15:7
**interest** [2] - 27:21, 74:10
**interested** [1] - 75:8
**interests** [1] - 3:18
**interfere** [1] - 74:10
**internet** [1] - 26:22
**Internet** [1] - 27:20
**interpret** [1] - 18:22
**interstate** [3] - 15:2, 16:5, 16:7
**introduced** [1] - 74:4
**investigate** [1] - 30:20
**investigating** [2] - 30:22, 31:1
**investigation** [18] - 21:15, 21:24, 22:19, 25:20, 31:6, 31:14, 31:18, 31:25, 32:1, 32:8, 33:24, 34:18, 55:19, 55:24, 58:21, 59:15, 59:17, 59:20
**investigations** [3] - 25:16, 31:3, 31:11
**Investigations** [3] - 26:9, 30:12, 30:19
**investigative** [6] - 33:25, 46:4, 46:9, 55:18, 68:6, 69:6
**investigator** [2] - 40:24
**investigators** [1] - 22:1
**invoke** [1] - 3:6
**invoked** [1] - 3:15
**involved** [1] - 31:14
**involving** [2] - 8:14, 30:20
**issue** [4] - 2:19, 5:16, 5:22, 7:1
**issues** [2] - 2:3, 74:18
**item** [3] - 12:1, 33:19, 60:25
**items** [16] - 33:7, 33:8, 33:19, 33:20, 39:25, 41:24, 48:24, 48:25, 49:1, 49:3, 54:20, 60:6, 73:25, 74:1
**itself** [3] - 8:1, 46:18, 74:5

## J

**jail** [4] - 8:13, 8:14, 66:12, 66:17
**Jane** [4] - 14:20, 14:22, 16:17, 16:19
**job** [3] - 11:2, 28:20,

28:21
**John** [1] - 25:16
**joined** [1] - 21:15
**Judge** [5] - 1:12, 20:9, 23:5, 24:2, 75:24
**judge** [4] - 23:12, 24:15, 34:11, 34:14
**judges** [1] - 11:3
**July** [7] - 25:6, 60:21, 61:3, 61:4, 63:4, 67:8, 67:13
**jurors** [9] - 17:3, 17:13, 28:18, 28:20, 29:15, 69:24, 75:8, 75:9, 75:21
**jury** [44] - 2:25, 5:23, 6:2, 6:8, 6:18, 9:14, 9:21, 10:7, 10:14, 10:18, 10:20, 10:21, 12:11, 15:5, 15:6, 17:21, 17:23, 32:11, 33:10, 37:3, 37:11, 39:15, 42:9, 43:22, 44:21, 48:22, 49:18, 51:3, 51:18, 52:7, 52:9, 52:15, 54:25, 58:23, 59:1, 63:8, 63:23, 65:24, 68:1, 68:10, 71:5, 72:4, 75:23
**Jury** [2] - 1:13, 9:17

## K

**Kayla** [12] - 25:9, 46:2, 46:5, 46:6, 63:18, 63:19, 63:20, 64:4, 65:25, 66:16, 66:20, 67:11
**keep** [4] - 13:24, 17:8, 62:9, 71:15
**key** [3] - 3:5, 3:19, 67:21
**kiddie** [1] - 20:12
**kids** [4] - 20:11, 64:2, 66:10, 66:20
**kind** [3] - 29:19, 52:17, 59:23
**kinds** [2] - 7:20, 15:8
**Kirsten** [1] - 28:14
**Kirstin** [1] - 1:19
**knowingly** [7] - 16:3, 16:16, 16:18, 24:17, 24:20
**knowledge** [1] - 54:20
**known** [1] - 19:12
**KY** [1] - 43:11

## L

**lacrosse** [1] - 8:22
**ladies** [9] - 10:22, 20:2, 23:13, 27:13, 28:4,

28:13, 52:3, 62:4, 71:8
**Lafler** [1] - 4:14
**laid** [1] - 7:3
**language** [2] - 4:11, 7:13
**laptop** [24] - 21:5, 21:8, 21:14, 21:16, 23:24, 24:18, 24:24, 26:4, 26:11, 27:10, 27:24, 33:8, 34:23, 38:15, 38:16, 38:20, 39:2, 39:4, 39:5, 39:12, 72:22, 73:10, 73:15, 73:17
**large** [1] - 47:5
**larger** [1] - 36:20
**lascivious** [2] - 15:9, 15:14
**last** [1] - 64:8
**law** [13] - 11:4, 11:5, 21:3, 22:5, 41:24, 45:5, 48:13, 49:2, 49:9, 61:4, 67:11, 68:13, 68:25
**lawyers** [2] - 11:17, 11:19
**lead** [2] - 13:13, 40:24
**leading** [1] - 6:2
**Leann** [4] - 46:2, 46:5, 46:6, 46:13, 55:10, 60:20, 60:22, 62:19, 67:6, 67:11, 68:12
**learned** [1] - 67:9
**learning** [1] - 21:14
**least** [6] - 6:10, 6:18, 21:19, 24:16, 24:19, 73:21
**leave** [1] - 71:14
**left** [10] - 8:25, 21:2, 36:20, 40:7, 42:11, 44:18, 46:19, 47:11, 48:25
**left-hand** [2] - 36:20, 44:18
**legal** [2] - 29:9, 72:12, 74:18
**legally** [1] - 19:9
**length** [3] - 28:23, 50:6, 74:1
**less** [1] - 10:5
**letter** [25] - 2:22, 3:24, 6:14, 7:4, 8:7, 8:9, 8:11, 8:13, 8:15, 9:4, 25:9, 25:10, 25:25, 37:5, 63:9, 63:10, 63:17, 64:13, 64:15, 65:9, 66:1, 66:5, 66:25, 67:10, 68:4
**letters** [2] - 65:13, 67:21
**letting** [1] - 8:6
**life** [3] - 66:17, 66:18, 66:21
**light** [16] - 4:11, 5:12,

6:3, 22:22, 22:25, 33:16, 40:6, 49:7, 51:5, 54:5, 56:14, 56:15, 56:16, 58:1, 58:5, 58:12
**light-colored** [1] - 51:5
**lighting** [2] - 34:3, 57:15
**likelihood** [1] - 3:7
**likely** [5] - 17:14, 75:6, 75:7, 75:10, 75:16
**limine** [5] - 7:3, 7:10, 8:2, 8:4, 9:8
**limit** [1] - 6:7
**limited** [4] - 5:23, 6:23, 12:2, 42:24
**list** [1] - 18:2
**listed** [1] - 60:17
**listen** [1] - 28:20
**listening** [3] - 13:21, 29:11, 62:8
**litigated** [1] - 5:17
**live** [2] - 47:8, 66:20
**lived** [2] - 46:12, 55:20
**lives** [1] - 68:10
**living** [1] - 39:21
**Liz** [1] - 28:13
**local** [1] - 31:24
**locate** [1] - 45:5
**located** [4] - 21:11, 26:15, 35:2, 41:6
**location** [2] - 34:6, 45:23
**lock** [2] - 48:9, 48:11
**logged** [1] - 53:11
**logic** [2] - 20:25, 28:6
**logical** [1] - 4:5
**logistical** [1] - 75:2
**logo** [4] - 33:13, 40:7, 44:18, 44:21
**Lombard** [1] - 1:24
**look** [5] - 6:9, 20:7, 34:2, 34:4, 62:15
**looked** [3] - 3:23, 7:13, 41:11
**looking** [15] - 6:20, 12:21, 22:12, 36:12, 38:20, 39:25, 40:1, 40:4, 45:10, 45:16, 51:18, 56:3, 57:10, 62:5, 74:15
**looks** [8] - 38:1, 38:6, 47:5, 48:9, 64:25, 65:8, 67:24, 75:21
**love** [2] - 66:21, 66:22
**lower** [2] - 43:7, 44:4
**lubricant** [1] - 43:11
**lustfulness** [1] - 15:12

## M

**magistrate** [2] - 34:10, 34:13
**mail** [10] - 59:22, 59:23, 60:24, 60:25, 61:2, 63:1, 63:6, 63:10, 66:5
**mailed** [1] - 15:1
**maintain** [1] - 59:17
**male** [2] - 33:12, 68:18
**males** [1] - 25:1
**man** [3] - 20:2, 21:17, 21:25
**manner** [2] - 6:16, 78:10
**manufactured** [4] - 23:23, 36:23, 38:4, 39:12
**marbling** [10] - 21:22, 22:9, 22:23, 25:23, 33:2, 56:3, 56:13, 56:16, 57:15, 58:15
**March** [25] - 19:4, 31:9, 32:5, 34:17, 35:13, 38:17, 40:18, 40:22, 41:11, 41:18, 43:13, 44:9, 44:23, 45:4, 45:21, 46:25, 47:3, 50:18, 51:16, 53:5, 55:5, 60:19, 62:21, 62:24
**mark** [1] - 35:5
**marked** [13] - 35:16, 36:7, 38:11, 44:11, 50:14, 51:12, 53:13, 61:20, 63:13, 65:19, 67:17, 69:12, 69:20
**markings** [1] - 53:10
**marks** [2] - 34:2, 34:5
**marriage** [1] - 27:1
**married** [2] - 19:8, 19:10
**Martin** [21] - 25:9, 46:2, 46:5, 46:6, 46:13, 47:8, 55:10, 60:20, 60:22, 62:19, 63:18, 63:19, 63:20, 64:4, 67:6, 67:11, 68:12
**Martin's** [1] - 62:23
**Mary** [3] - 1:23, 78:5, 78:16
**MARYLAND** [1] - 1:1
**Maryland** [15] - 1:11, 1:24, 19:12, 19:20, 22:17, 23:24, 30:21, 32:3, 34:11, 35:3, 41:7, 55:23, 56:23, 59:8, 68:9
**master** [8] - 22:22, 25:23, 27:4, 42:11, 43:5, 56:13, 57:5, 57:10
**material** [1] - 16:10

**materially** [1] - 4:9
**materials** [3] - 15:1, 16:6, 23:23
**matter** [4] - 13:21, 34:8, 78:6, 78:10
**matters** [1] - 71:11
**mean** [4] - 12:22, 13:1, 13:12, 40:19
**meaning** [1] - 15:10
**means** [2] - 20:12, 29:6
**members** [16] - 10:18, 32:10, 33:10, 37:3, 39:15, 42:9, 43:22, 44:21, 48:22, 49:18, 51:3, 63:8, 63:23, 65:24, 68:1, 68:10
**memorandum** [1] - 74:17
**memorializations** [1] - 20:4
**memory** [2] - 21:11, 36:5
**met** [1] - 15:15
**MG** [34] - 19:6, 19:9, 19:12, 19:14, 19:16, 19:18, 19:19, 19:22, 20:1, 21:2, 22:2, 23:14, 23:17, 23:19, 24:23, 25:1, 25:11, 25:18, 26:13, 27:2, 27:5, 27:7, 27:14, 27:15, 27:17, 27:20, 28:2, 33:16, 64:11, 66:5, 66:6, 66:22
**MG's** [9] - 19:15, 21:5, 21:6, 23:17, 24:9, 24:11, 26:5, 26:25, 27:6
**Micro** [2] - 38:1, 38:4
**microphone** [2] - 10:12, 29:25
**mid** [3] - 52:4, 75:11, 75:16
**mid-afternoon** [1] - 52:4
**mid-morning** [2] - 75:11, 75:16
**middle** [4] - 39:7, 42:12, 42:15, 50:11
**might** [2] - 4:3, 5:24
**mind** [4] - 13:24, 17:8, 62:9, 71:15
**minor** [9] - 3:16, 4:1, 4:2, 16:11, 21:9, 73:3, 73:6, 74:6, 74:15
**minors** [1] - 20:10
**minute** [4] - 18:10, 35:4, 70:21, 71:12
**minutes** [4] - 10:3, 10:5, 52:5, 73:23
**Mitchell** [1] - 73:21
**model** [2] - 36:21, 38:2

**modeling** [1] - 20:13
**moles** [1] - 34:6
**molested** [1] - 20:19
**moment** [7] - 2:4, 2:20, 10:16, 25:25, 36:12, 38:20, 70:13
**monitor** [1] - 6:23
**month** [1] - 19:8
**morning** [13] - 2:25, 13:5, 13:23, 30:7, 30:8, 45:21, 53:5, 71:24, 75:6, 75:7, 75:11, 75:16, 75:25
**most** [4] - 4:5, 6:22, 29:10
**mother** [11] - 2:20, 4:1, 4:5, 8:15, 8:18, 9:7, 23:17, 25:18, 27:1, 46:6, 55:11
**mother's** [2] - 22:17, 23:2
**motion** [8] - 7:2, 8:2, 8:3, 65:8, 72:6, 72:7, 72:10, 73:19
**motions** [4] - 7:10, 8:4, 9:8, 72:25
**mouth** [1] - 19:15
**move** [1] - 27:2
**moved** [2] - 19:10, 19:19, 20:1
**moving** [3] - 3:20, 24:12, 42:19
**Moye** [5] - 10:12, 10:16, 71:18, 71:23, 75:17
**Moye's** [1] - 17:14
**MR** [35] - 2:23, 4:19, 5:8, 5:20, 6:25, 9:11, 10:1, 10:3, 10:9, 10:11, 19:2, 20:18, 29:17, 29:20, 30:6, 52:1, 52:8, 52:12, 55:3, 55:13, 60:12, 61:8, 62:3, 62:12, 62:14, 62:17, 71:1, 72:14, 72:23, 73:7, 73:11, 73:14, 74:20, 76:3, 77:6
**MS** [15] - 3:3, 5:12, 7:6, 9:2, 10:5, 20:14, 28:12, 70:16, 70:18, 72:10, 72:24, 74:23, 75:2, 75:5, 76:1
**mug** [1] - 53:24
**must** [3] - 12:2, 12:19, 13:11

## N

**name** [5] - 2:7, 19:6, 28:13, 29:25, 50:13
**named** [2] - 19:5, 31:6

**narcotic** [1] - 31:3
**nature** [6] - 3:12, 16:10, 24:25, 31:4, 31:10, 34:3
**necessarily** [1] - 72:19
**necessary** [4] - 4:4, 6:10, 6:12, 74:8
**neck** [1] - 54:5
**need** [16] - 8:25, 9:24, 10:2, 10:11, 10:17, 17:4, 17:11, 17:21, 17:22, 18:3, 18:5, 66:3, 66:5, 66:6, 66:12, 71:3
**needed** [1] - 22:6
**needs** [1] - 6:24
**never** [3] - 5:9, 14:5, 66:15
**new** [1] - 19:20
**next** [7] - 9:13, 26:8, 28:20, 46:4, 46:8, 59:12, 67:25
**nine** [5] - 14:15, 23:5, 23:15, 28:7
**Nine** [1] - 2:15
**ninth** [1] - 51:6
**NO** [1] - 1:5
**non** [4] - 73:10, 73:11, 73:16, 74:13
**non-produced** [4] - 73:10, 73:11, 73:16, 74:13
**normal** [1] - 75:13
**NORTHERN** [1] - 1:2
**note** [1] - 74:11
**notes** [6] - 17:17, 17:18, 17:19, 17:21, 18:9, 71:14
**nothing** [3] - 9:11, 11:6, 14:2
**notice** [3] - 15:11, 32:25, 71:20
**noticed** [1] - 22:11
**November** [10] - 19:7, 19:25, 21:3, 26:3, 32:5, 34:24, 35:12, 68:6, 69:5, 69:17
**number** [7] - 36:21, 37:2, 37:11, 39:5, 39:10, 65:14, 68:4
**Number** [6] - 9:4, 9:5, 9:6, 9:17, 9:19, 9:20
**Number(s** [1] - 78:7
**numbers** [11] - 38:6, 63:12, 64:21, 65:1, 65:12, 65:17, 65:21, 67:24, 67:25, 68:1, 68:3
**numerous** [1] - 26:20

## O

**O'Neil** [1] - 19:5

**oath** [1] - 11:11
**objected** [1] - 8:6
**objecting** [7] - 3:4, 7:7, 7:9, 7:10, 9:3, 9:5, 9:7
**objection** [7] - 3:25, 4:10, 7:12, 9:19, 11:22, 11:23, 20:14
**objections** [3] - 11:17, 11:20, 29:10
**obligation** [2] - 11:19, 18:19
**observed** [3] - 40:10, 56:7, 70:10
**observing** [1] - 29:8
**obtain** [2] - 23:1, 69:9
**obtained** [9] - 34:9, 38:16, 39:16, 46:10, 48:6, 58:23, 61:1, 63:9, 68:8
**obviously** [8] - 7:13, 7:24, 9:20, 12:1, 18:8, 72:6, 73:19, 74:24
**occasions** [1] - 27:5
**occur** [1] - 31:8
**occurred** [2] - 8:22, 27:15
**October** [1] - 23:17
**OF** [2] - 1:1, 1:4
**offense** [2] - 7:17, 9:16
**offer** [6] - 4:20, 4:22, 5:4, 5:7, 5:9
**offered** [3] - 5:14, 11:20, 12:15
**offering** [3] - 6:5, 6:11, 20:15
**office** [1] - 13:6
**official** [2] - 16:19, 78:9
**Official** [1] - 78:17
**officials** [3] - 60:23, 61:4, 67:14
**old** [2] - 19:6, 23:15
**Old** [1] - 6:17
**once** [3] - 18:18, 18:21, 19:22
**One** [1] - 2:15
**one** [28] - 4:1, 13:6, 17:24, 18:1, 19:8, 21:12, 21:19, 22:13, 23:7, 23:9, 24:16, 24:19, 29:12, 31:24, 33:15, 33:19, 35:13, 36:12, 41:21, 44:3, 51:22, 52:23, 55:18, 70:13, 71:24, 72:15, 73:3, 73:9
**one-third** [1] - 52:23
**ones** [3] - 7:19, 22:14, 23:4
**open** [3] - 17:8, 33:23, 71:15
**opened** [3] - 31:5, 32:6,

34:18
**opening** [5] - 9:25, 10:2, 10:8, 18:11, 19:1
**opinion** [2] - 17:9, 73:20
**opinions** [2] - 12:6, 12:10
**opportunity** [1] - 29:12
**opposed** [3] - 15:25, 73:4, 73:9
**orange** [27] - 21:18, 21:20, 22:6, 22:7, 22:13, 22:18, 25:20, 25:22, 27:11, 27:17, 32:22, 32:24, 33:14, 40:4, 40:5, 42:2, 42:7, 42:13, 42:14, 43:13, 44:8, 44:24, 45:9, 49:6, 49:7, 49:16, 54:7
**orange-reddish** [2] - 32:24, 49:7
**order** [2] - 15:11, 18:1
**ordinarily** [1] - 12:5
**original** [2] - 60:24, 73:20
**otherwise** [1] - 71:5
**ought** [1] - 11:7
**outbuilding** [1] - 49:2
**outer** [2] - 54:7, 70:2
**outgoing** [5] - 59:23, 60:24, 63:1, 63:6, 63:10
**outline** [1] - 16:21
**outside** [5] - 12:17, 12:18, 13:11, 23:24, 56:24
**overhead** [1] - 22:24
**overrule** [1] - 3:25
**overruled** [3] - 11:24, 20:16, 20:17
**overview** [1] - 20:15
**own** [3] - 19:23, 66:17
**Oyer** [8] - 1:18, 5:10, 10:4, 28:11, 28:13, 70:15, 72:9, 74:22
**OYER** [13] - 3:3, 5:12, 10:5, 20:14, 28:12, 70:16, 70:18, 72:10, 72:24, 74:23, 75:2, 75:5, 76:1

## P

**p.m** [7] - 2:2, 10:14, 52:6, 52:9, 72:4, 76:5
**page** [49] - 36:14, 36:20, 37:19, 38:19, 38:24, 41:2, 41:13, 42:3, 42:15, 42:25, 43:12, 44:7, 44:17, 46:21, 47:12, 47:19, 47:24,

48:16, 49:12, 49:25,
51:2, 51:6, 53:14, 53:20,
53:25, 54:9, 56:19, 57:1,
57:6, 57:11, 57:19,
57:22, 63:21, 63:22,
64:9, 64:17, 64:18,
64:24, 64:25, 65:4, 66:4,
66:8, 66:14, 66:19,
69:25, 70:3, 70:6
    **Page** [1] - 51:9
    **PAGE** [1] - 77:3
    **pages** [2] - 63:11, 78:8
    **painful** [1] - 28:19
    **pair** [1] - 45:10
    **pajama** [15] - 21:20,
27:11, 32:23, 33:14,
40:5, 45:10, 45:12, 49:6,
49:16, 50:1, 50:6, 50:8,
50:18, 50:20
    **panel** [1] - 10:18
    **pants** [19] - 21:20, 22:7,
22:18, 25:22, 27:12,
27:17, 32:23, 33:14,
40:5, 45:10, 45:12, 49:6,
49:16, 50:1, 50:6, 50:8,
50:18, 50:20
    **paper** [1] - 17:13
    **parentheses** [3] -
67:25, 68:1, 68:3
    **part** [6] - 11:24, 14:22,
15:15, 29:10, 59:17,
73:12
    **particular** [1] - 8:21,
12:9, 13:18, 15:15,
26:21, 27:21, 30:25,
34:9, 38:2, 39:25, 41:24
    **parties** [6] - 4:20, 4:24,
4:25, 11:13, 54:24, 55:1
    **partly** [1] - 75:8
    **patience** [1] - 72:1
    **Paul** [1] - 1:16, 1:17
    **pay** [1] - 18:9
    **peer** [2] - 26:19
    **peer-to-peer** [1] - 26:19
    **penis** [1] - 19:15
    **people** [1] - 4:3
    **perhaps** [7] - 2:5, 3:16,
9:17, 17:14, 18:13,
70:20, 75:17
    **period** [2] - 25:8, 63:4
    **permission** [1] - 61:24
    **permit** [2] - 4:16, 7:15
    **permitted** [1] - 12:10
    **permitting** [1] - 71:16
    **person** [6] - 8:21,
12:23, 14:19, 15:8, 34:4,
66:2
    **personal** [2] - 42:23,
48:23, 49:1
    **perspective** [3] - 2:24,

9:12, 74:20
    **persuaded** [2] - 14:21,
16:17
    **pertains** [2] - 24:16,
24:19
    **phone** [29] - 21:5,
21:10, 23:25, 24:21,
25:13, 26:4, 26:11,
27:11, 27:25, 34:23,
35:11, 35:21, 36:4,
36:11, 36:18, 36:21,
36:23, 37:2, 37:4, 37:10,
37:18, 52:16, 52:17,
52:19, 59:22, 64:6, 66:9,
72:21
    **phones** [1] - 45:8
    **photo** [3] - 42:12,
53:17, 53:18
    **photograph** [18] -
37:14, 38:22, 41:8,
41:10, 42:10, 43:16,
43:19, 43:20, 44:4, 48:3,
48:22, 49:19, 49:20,
50:4, 50:11, 50:12, 51:4,
51:19
    **photographed** [1] -
53:10
    **photographs** [5] - 6:22,
21:9, 26:12, 54:14, 69:21
    **photos** [5] - 20:13,
23:22, 33:3, 56:4, 56:5
    **picked** [1] - 59:6
    **picture** [12] - 14:24,
14:25, 15:10, 16:4,
16:11, 23:21, 43:8,
43:10, 47:14, 50:5,
56:22, 57:10
    **pictures** [8] - 6:3, 20:4,
23:15, 23:16, 25:12,
32:16, 66:9, 73:5
    **piece** [3] - 17:13, 50:23,
63:6
    **pieces** [6] - 26:2, 27:8,
40:9, 49:9, 63:1
    **place** [4] - 21:23, 22:8,
22:21, 53:12
    **placed** [4] - 37:18,
60:24, 69:17, 69:18
    **plan** [1] - 28:24
    **planning** [2] - 62:2,
73:9
    **play** [3] - 62:2, 62:12,
67:2
    **playing** [2] - 62:16, 67:4
    **plea** [6] - 4:17, 4:20,
4:21, 4:22, 5:15
    **plead** [2] - 2:14, 5:14
    **point** [10] - 8:8, 8:17,
31:5, 34:9, 40:13, 51:25,
55:19, 63:5, 65:16, 66:23

    **Police** [1] - 25:17
    **polka** [4] - 21:7, 22:3,
26:5, 27:6
    **porn** [1] - 20:12
    **pornography** [46] -
5:22, 6:3, 8:1, 14:17,
15:18, 15:20, 16:1, 16:2,
16:8, 20:6, 20:8, 20:18,
23:7, 23:8, 23:9, 23:12,
24:2, 24:5, 24:14, 24:17,
24:20, 24:24, 25:3, 26:7,
26:12, 26:14, 26:20,
27:19, 27:21, 31:12,
31:15, 32:7, 33:5, 33:8,
33:24, 40:10, 44:25,
50:21, 56:6, 58:18,
58:24, 59:9, 73:5, 74:6,
74:14
    **poses** [1] - 20:11
    **position** [1] - 6:6
    **possessed** [7] - 16:3,
24:17, 24:20, 24:22,
27:19, 73:15
    **possession** [2] - 15:25,
16:1, 23:8, 24:14, 74:1
    **possessory** [1] - 74:10
    **possible** [2] - 6:23,
75:18
    **possibly** [1] - 56:3
    **potential** [2] - 5:1,
31:14
    **potentially** [2] - 54:17,
66:25
    **practice** [1] - 75:14
    **precede** [2] - 3:9, 3:11
    **predict** [1] - 71:9
    **prejudice** [2] - 7:23, 9:8
    **prejudicial** [2] - 3:12,
7:25
    **preliminary** [2] - 9:15,
10:24
    **premises** [1] - 39:17
    **prepared** [1] - 65:20
    **prepubescent** [1] -
32:12
    **presence** [2] - 2:20, 3:4
    **present** [11] - 2:24,
3:13, 3:16, 7:14, 10:19,
12:24, 14:6, 18:20,
28:24, 40:22, 73:9
    **presentation** [2] - 29:9,
29:14
    **presented** [3] - 4:7,
72:24, 73:2
    **preserved** [1] - 7:13
    **preside** [1] - 18:3
    **presumed** [1] - 13:25
    **pretrial** [2] - 4:25, 25:9
    **pretty** [1] - 22:13
    **prevails** [1] - 4:11

    **previously** [1] - 22:23
    **problem** [2] - 74:11,
75:15
    **problems** [1] - 6:20
    **proceeding** [1] - 16:20
    **Proceedings** [1] - 76:5
    **proceedings** [2] - 78:6,
78:9
    **process** [3] - 53:7,
54:17, 55:6
    **produced** [11] - 7:19,
7:22, 15:1, 16:5, 23:23,
73:4, 73:10, 73:11,
73:16, 74:13
    **producing** [1] - 14:23
    **production** [13] - 14:17,
15:17, 15:20, 16:1, 23:7,
23:8, 23:12, 24:2, 24:5,
31:15, 33:24, 58:24, 59:9
    **profile** [1] - 53:24
    **program** [1] - 26:19
    **progressed** [1] - 19:7
    **proof** [6] - 13:2, 13:13,
14:3, 14:4, 15:16, 66:11
    **property** [4] - 53:11,
54:17, 60:3, 72:17
    **Property** [3] - 54:21,
55:8, 55:11
    **proposed** [1] - 5:2
    **prove** [10] - 6:15, 7:17,
14:5, 14:11, 14:18,
15:19, 16:2, 16:7, 16:15,
18:13
    **proven** [1] - 14:1
    **provide** [3] - 26:14,
59:21, 60:3
    **provided** [3] - 3:24,
60:6
    **provides** [1] - 4:3
    **pubic** [2] - 15:11, 15:13
    **public** [1] - 6:23
    **publication** [1] - 6:6
    **publish** [2] - 6:11, 6:22
    **publishes** [1] - 6:8
    **publishing** [1] - 5:22
    **purple** [4] - 21:6, 22:3,
26:5, 27:6
    **purplish** [1] - 54:6
    **purpose** [3] - 12:2,
14:23, 56:2
    **purposes** [2] - 19:23,
20:20
    **pursuant** [1] - 5:15
    **put** [7] - 4:13, 4:16,
7:15, 18:1, 19:15, 19:16,
19:17

**Q**

    **questions** [7] - 11:16,
11:17, 17:10, 70:13,
70:16, 70:17, 70:18
    **quickly** [1] - 22:1
    **quite** [2] - 35:17, 43:24
    **quote** [1] - 25:12

**R**

    **R-I-C-H-A-R-D** [1] - 30:2
    **rain** [1] - 13:9
    **raincoat** [1] - 13:8
    **raining** [1] - 13:11
    **raise** [3] - 10:19, 29:9,
29:21
    **raped** [1] - 20:19
    **rather** [1] - 12:6
    **reaching** [1] - 12:11
    **read** [8] - 37:3, 37:3,
37:11, 44:21, 54:23,
60:9, 63:23, 65:23, 66:1
    **readed** [1] - 66:16
    **ready** [2] - 10:7, 52:7
    **realized** [1] - 11:1
    **really** [3] - 63:25, 64:11,
66:6
    **reason** [3] - 11:21, 17:7,
71:22
    **reasonable** [5] - 13:10,
14:11, 14:19, 23:11,
71:24
    **reasons** [4] - 7:10, 9:7,
12:14, 75:8
    **received** [3] - 62:25,
63:5, 66:23
    **recently** [1] - 68:24
    **recess** [2] - 52:4, 52:6
    **recessed** [1] - 52:4
    **recitation** [1] - 11:1
    **recognize** [34] - 35:8,
35:17, 36:8, 36:15,
37:20, 38:12, 38:24,
41:3, 42:4, 43:1, 44:12,
46:22, 47:13, 47:20,
47:25, 48:17, 49:13,
50:15, 51:7, 51:13,
53:14, 53:21, 54:1,
54:10, 56:19, 57:2, 57:7,
57:12, 57:23, 63:14,
64:18, 64:19, 67:18,
69:13
    **recollection** [1] - 17:20
    **reconsideration** [4] -
8:3, 72:6, 72:11, 73:19
    **record** [14] - 2:4, 2:8,
3:3, 4:14, 4:17, 5:13,

7:7, 9:3, 11:12, 30:1, 60:10, 70:22, 72:20

**recorded** [8] - 8:14, 60:1, 60:16, 62:7, 62:20, 62:21, 67:7, 78:5

**recording** [2] - 62:10, 66:24

**recordings** [2] - 60:17, 61:20

**red** [4] - 21:20, 22:7, 22:18, 25:22

**reddish** [3] - 32:24, 49:7, 54:7

**reddish-orange** [1] - 54:7

Reebok [1] - 50:13

**refer** [2] - 4:15, 14:12

**reference** [2] - 50:23, 72:16

**referenced** [2] - 33:18, 51:22

**referred** [8] - 14:19, 25:25, 26:5, 52:20, 54:16, 59:24

**referring** [6] - 33:4, 42:14, 43:25, 52:22, 56:6, 64:21

**reflect** [2] - 5:14, 41:10

**reflected** [1] - 62:18

**regard** [1] - 13:16

**regarding** [3] - 4:14, 4:17, 25:12

**regular** [1] - 63:10

**reject** [2] - 12:13, 13:19

**rejected** [1] - 4:23

**related** [1] - 7:11

**relationship** [1] - 19:7

**relatively** [1] - 26:1

**relevance** [1] - 9:8

**remain** [2] - 14:7, 55:14

**remind** [2] - 54:25, 73:1

**reminder** [1] - 63:19

**repeat** [1] - 13:23

**repeatedly** [4] - 5:14, 23:19, 23:21, 27:20

**reply** [2] - 72:7, 72:18

**reporter** [1] - 18:6

**Reporter** [1] - 78:17

**REPORTER'S** [1] - 78:3

**represent** [2] - 3:18, 28:15

**representative** [1] - 3:18

**request** [3] - 59:21, 61:24, 72:20

**requested** [2] - 4:13, 73:25

**requesting** [1] - 72:17

**research** [1] - 17:5

**reserve** [1] - 5:15

**resolution** [1] - 5:1

**respect** [11] - 21:15, 24:3, 40:8, 44:23, 45:2, 58:15, 59:4, 60:19, 60:21, 72:10, 73:15

**response** [2] - 72:7, 72:17

**responsible** [1] - 8:11

**rest** [3] - 66:16, 72:11, 74:16

**resting** [1] - 73:19

**result** [3] - 46:3, 46:8, 58:21

Resume [1] - 52:6

**retrieved** [1] - 55:11

**return** [2] - 28:9, 72:17

**returned** [2] - 59:1, 72:22

**review** [1] - 33:7

**reviewed** [4] - 6:13, 60:6, 61:15, 61:19

RICHARD [2] - 29:22, 77:5

Richard [1] - 30:2

Rick [1] - 29:18

**right-hand** [3] - 37:13, 43:7, 47:16

**rights** [3] - 4:2, 4:6, 5:16

Rights [2] - 2:21, 3:14

Riley [7] - 10:8, 18:25, 28:11, 29:19, 51:24, 52:11, 72:13

**riley** [1] - 1:16

RILEY [33] - 4:19, 5:8, 5:20, 6:25, 9:11, 10:1, 10:3, 10:9, 10:11, 19:2, 20:18, 29:17, 29:20, 30:6, 52:1, 52:12, 55:3, 55:13, 60:12, 61:8, 62:3, 62:12, 62:14, 62:17, 71:1, 72:14, 72:23, 73:7, 73:11, 73:14, 74:20, 76:3, 77:6

**ring** [14] - 21:13, 25:24, 27:12, 27:18, 54:7, 55:7, 55:11, 68:14, 68:15, 68:18, 69:9, 69:16, 70:1

**rings** [1] - 54:6

**risks** [1] - 71:21

**room** [6] - 15:6, 17:21, 17:23, 21:22, 22:8, 32:15

**rooms** [2] - 58:7, 58:10

**roughly** [1] - 30:24

RPR [1] - 1:23

Rule [2] - 3:6, 72:17

**rule** [1] - 72:18

**rules** [2] - 11:21, 13:24

Rules [1] - 3:7

**ruling** [1] - 11:22

**S**

**safe** [1] - 53:12

**salutation** [1] - 63:23

Samsung [11] - 21:5, 21:10, 23:25, 24:21, 26:4, 27:24, 34:23, 35:11, 35:20, 36:11, 52:16

Satellite [1] - 38:15

**saw** [14] - 12:7, 12:24, 22:22, 32:11, 32:17, 32:20, 33:1, 33:11, 51:9, 51:21, 58:15, 58:17, 65:11, 68:20

**scars** [1] - 34:5

**scope** [1] - 20:15

**screen** [1] - 43:23

Scripture [1] - 54:13

SD [14] - 21:11, 23:25, 26:11, 35:23, 35:25, 36:1, 36:3, 37:24, 37:25, 38:2, 38:4, 69:3, 70:10, 72:22

**search** [32] - 7:2, 7:3, 8:17, 21:3, 22:10, 22:16, 23:1, 26:19, 26:22, 26:23, 32:1, 34:10, 38:16, 39:16, 40:14, 40:21, 41:20, 41:23, 45:4, 46:10, 46:25, 47:2, 48:7, 48:14, 49:2, 50:24, 62:22, 68:8, 68:16, 69:7, 71:4

**searching** [4] - 7:20, 25:3, 49:10, 69:9

**seated** [8] - 2:18, 10:16, 10:21, 28:14, 28:16, 29:24, 52:10, 72:5

**second** [18] - 8:8, 14:20, 15:21, 21:25, 24:5, 36:14, 38:24, 41:13, 46:25, 47:2, 47:10, 47:12, 53:20, 57:1, 63:21, 64:9, 66:4, 70:3

**secured** [1] - 53:11

Security [7] - 21:15, 25:15, 26:9, 30:12, 30:16, 30:18

**see** [42] - 2:4, 7:23, 8:12, 9:18, 12:18, 13:8, 13:9, 13:10, 20:23, 23:16, 24:10, 24:12, 24:23, 24:25, 25:2, 26:6, 26:16, 28:19, 33:12, 37:5, 37:15, 38:7, 42:12, 43:8, 43:10, 43:19, 49:23, 50:12, 52:18,

57:9, 65:4, 66:10, 66:15, 70:20, 71:3, 71:25, 72:2, 75:1

**seeing** [7] - 20:22, 42:9, 51:3, 58:5, 65:6, 66:20, 69:24

**seek** [1] - 27:21

**seeking** [1] - 68:15

**seize** [2] - 41:24, 68:13

**seized** [17] - 21:5, 21:6, 23:3, 34:24, 42:7, 43:13, 44:9, 44:15, 44:23, 50:9, 50:18, 50:24, 51:16, 61:5, 69:16, 70:9

**seizure** [10] - 21:4, 25:20, 25:21, 25:24, 26:2, 26:3, 26:4, 40:14, 48:14

**selected** [1] - 10:18

**selection** [1] - 2:25

**self** [1] - 75:8

**self-interested** [1] - 75:8

**sense** [3] - 13:21, 20:25, 28:6

**sentence** [2] - 63:24, 64:9

**separate** [1] - 73:4

**serial** [2] - 39:4, 39:10

**series** [7] - 38:6, 64:21, 64:25, 65:17, 65:21, 67:24, 67:25

**serious** [1] - 66:20

**seriously** [1] - 66:17

**service** [2] - 28:17, 29:15

Session [1] - 2:2

**set** [2] - 3:10, 72:11

**seventh** [1] - 44:7, 49:25

**several** [2] - 14:15, 32:12

**sex** [5] - 20:6, 23:19, 26:21, 27:22, 32:12

**sexual** [6] - 15:7, 15:12, 19:23, 20:20, 73:6, 74:15

**sexually** [11] - 9:18, 14:22, 15:3, 15:6, 16:10, 16:12, 19:14, 20:3, 20:10, 20:19, 25:1

**sexy** [1] - 20:11

**shape** [1] - 65:9

**sharing** [1] - 26:19

**shift** [2] - 55:17, 58:20

**shifting** [1] - 34:8

**shirt** [32] - 21:18, 21:19, 22:6, 22:13, 25:21, 27:11, 27:17, 32:22, 33:13, 33:15, 40:4, 40:6, 40:7, 42:2, 42:7, 42:13,

42:14, 43:13, 44:9, 44:15, 44:19, 44:23, 44:24, 45:3, 45:9, 49:7, 51:5, 51:9, 51:16, 51:18, 51:21

**shirts** [2] - 45:16, 45:18

**shortly** [1] - 19:10

**shot** [1] - 53:24

**shoulder** [1] - 54:5

**show** [24] - 23:14, 23:18, 23:20, 23:22, 24:8, 25:10, 27:13, 27:15, 27:16, 27:17, 27:19, 27:20, 27:23, 28:1, 29:3, 35:5, 35:16, 52:13, 56:18, 61:9, 63:13, 64:17, 67:17, 69:20

**showing** [45] - 36:7, 36:14, 37:10, 37:19, 38:11, 38:19, 38:24, 41:2, 41:13, 42:3, 42:25, 43:12, 44:7, 44:11, 46:21, 47:12, 47:19, 47:24, 48:16, 49:12, 49:25, 50:14, 51:2, 51:6, 51:12, 53:13, 53:20, 53:25, 54:9, 57:1, 57:6, 57:11, 57:19, 57:22, 63:21, 64:17, 64:18, 64:24, 65:19, 66:4, 66:14, 69:12, 70:3, 70:6

**sic** [1] - 66:16

**side** [12] - 33:3, 36:18, 36:20, 37:13, 39:2, 39:4, 43:8, 44:18, 47:17, 47:23, 53:24, 72:8

**sight** [1] - 24:12

**signature** [1] - 78:12

**silent** [1] - 14:7

**silverish** [1] - 70:1

SIM [4] - 35:20, 37:18, 37:23, 69:3

**similar** [2] - 58:19, 70:12

**similarly** [1] - 23:20

**simple** [1] - 13:4

**simulated** [1] - 15:7

**sister** [5] - 25:9, 25:11, 46:7, 63:20, 64:7

**sites** [1] - 7:21

**sits** [1] - 46:19

**sitting** [3] - 17:11, 29:8, 29:11

**situation** [1] - 72:19

**six** [1] - 14:16

**sixth** [4] - 43:12, 44:17, 49:12, 57:22

**sized** [1] - 35:11

**slot** [2] - 37:14, 37:17

**slowly** [1] - 65:23
**SM** [2] - 36:22, 36:23
**SM-G900V** [2] - 36:22, 36:23
**small** [1] - 35:17
**snowing** [3] - 75:5, 75:6, 75:11
**someone** [2] - 31:6, 53:8
**somewhat** [2] - 36:20, 68:24
**Son** [1] - 44:22
**soon** [1] - 75:18
**sorry** [6] - 10:1, 35:24, 63:25, 64:18, 66:2, 70:17
**sort** [3] - 4:16, 42:17, 57:16
**sought** [1] - 25:2
**sounds** [1] - 71:18
**speaking** [10] - 31:10, 32:10, 32:20, 33:11, 33:23, 36:3, 40:19, 45:7, 53:7, 54:16
**special** [1] - 12:9
**Special** [2] - 30:14, 70:20
**specifically** [2] - 26:23, 37:14
**specifics** [2] - 31:23, 45:22
**spell** [1] - 29:25
**spend** [1] - 66:16
**spent** [1] - 27:16
**splashed** [1] - 57:16
**spokesperson** [1] - 18:4
**stand** [4] - 2:7, 2:19, 2:22, 10:19
**start** [6] - 2:5, 28:17, 62:5, 72:5, 75:6, 75:11
**started** [4] - 10:24, 19:4, 31:1, 65:14
**starting** [1] - 65:13
**starts** [1] - 64:10
**state** [7] - 2:7, 5:3, 29:25, 32:3, 35:11, 42:18, 72:19
**statement** [3] - 8:24, 18:11, 19:1
**statements** [1] - 11:16
**States** [2] - 55:4, 60:13
**STATES** [2] - 1:1, 1:4
**stating** [1] - 5:24
**statute** [4] - 3:23, 4:3, 4:6, 4:12
**stay** [1] - 17:22
**stenographically** [1] - 78:6
**step** [11] - 9:13, 15:22, 15:23, 24:6, 31:23, 32:1,

46:4, 46:9, 67:9, 69:6, 70:20
**steps** [6] - 25:19, 31:24, 33:25, 55:18, 59:4, 68:7
**Steven** [2] - 25:17, 26:8
**stick** [1] - 71:3
**still** [2] - 24:25, 52:18
**stimulation** [2] - 15:12, 20:20
**stipulate** [1] - 11:14
**stipulated** [2] - 55:3, 60:12
**stipulation** [4] - 6:17, 54:23, 55:1, 60:10
**stipulations** [3] - 6:4, 6:5, 11:13
**stop** [2] - 19:25, 37:7
**storage** [1] - 36:4
**story** [1] - 47:10
**straightforward** [1] - 24:15
**stream** [1] - 60:25
**Street** [1] - 1:24
**stressed** [1] - 64:1
**stricken** [1] - 12:3
**striped** [1] - 49:7
**stripes** [4] - 33:16, 40:6, 49:8, 51:5
**stuff** [3] - 31:4, 45:8, 59:23
**subject** [4] - 6:20, 7:24, 8:9, 8:11
**substantial** [3] - 15:22, 15:23, 24:6
**substantially** [2] - 6:7, 14:14
**succeeds** [1] - 4:5
**sufficient** [3] - 74:3, 74:12, 75:16
**sufficiently** [1] - 75:21
**sum** [1] - 27:13
**summarize** [1] - 18:22
**sunny** [1] - 13:5
**super** [2] - 64:1, 66:21
**superseding** [4] - 2:6, 2:15, 28:7, 28:8
**supposed** [1] - 18:12
**suppress** [1] - 8:3
**surprises** [1] - 29:4
**surprisingly** [1] - 21:16
**suspected** [7] - 32:7, 33:5, 40:10, 44:25, 50:21, 56:6, 58:17
**sustained** [1] - 11:23
**sweatpants** [1] - 8:19
**switch** [1] - 68:5
**SWORN** [1] - 29:22
**sworn** [6] - 9:14, 10:7, 10:17, 10:20, 10:21,

11:10
**symbol** [1] - 65:10

**T**

**T-shirt** [5] - 33:13, 40:4, 40:7, 42:2, 42:7
**table** [3] - 28:14, 28:16, 29:5
**tampering** [5] - 8:7, 9:20, 16:14, 23:9, 25:5
**tarp** [1] - 48:24
**tattoo** [2] - 54:4, 54:13
**tattoos** [2] - 34:5, 53:10
**tentatively** [1] - 8:5
**term** [2] - 58:4, 68:19
**terms** [9] - 6:15, 7:2, 7:3, 7:19, 8:4, 17:3, 25:14, 26:22, 42:17
**testified** [5] - 11:10, 39:14, 45:15, 53:4, 62:25
**testify** [2] - 12:5, 14:6
**testimony** [20] - 3:8, 3:11, 3:12, 3:13, 3:21, 4:8, 4:9, 7:11, 11:10, 11:25, 12:3, 12:12, 12:16, 12:23, 13:18, 16:19, 26:1, 26:16
**thanking** [1] - 28:17
**THE** [71] - 1:1, 1:1, 2:3, 2:7, 2:9, 2:10, 2:11, 2:12, 2:13, 2:14, 2:16, 2:17, 2:18, 3:1, 3:22, 5:6, 5:10, 5:18, 5:21, 7:1, 7:12, 9:10, 9:13, 10:2, 10:4, 10:6, 10:10, 10:13, 10:15, 10:18, 10:21, 10:22, 20:16, 28:11, 29:16, 29:19, 29:21, 29:23, 29:24, 30:2, 30:4, 35:7, 51:24, 52:3, 52:7, 52:10, 54:25, 60:11, 62:1, 62:4, 62:13, 62:15, 70:15, 70:17, 70:19, 70:23, 71:2, 71:8, 72:5, 72:13, 72:15, 73:1, 73:8, 73:13, 73:18, 74:22, 74:24, 75:4, 75:12, 76:2, 76:4
**themselves** [2] - 62:6, 73:6
**therefore** [3] - 3:6, 4:6, 8:12
**they've** [1] - 29:13
**thigh** [1] - 24:11
**thinks** [1] - 6:12
**third** [16] - 2:6, 2:15, 14:25, 16:7, 28:7, 37:19, 41:13, 47:19, 52:23,

53:25, 57:6, 64:17, 64:18, 65:4, 66:8, 70:6
**three** [6] - 19:19, 53:5, 64:25, 73:10, 74:13
**three-page** [1] - 64:25
**throughout** [1] - 6:1
**Thursday** [3] - 71:6, 72:2, 75:1
**title** [1] - 30:13
**today** [3] - 6:2, 71:11, 71:14
**tomorrow** [8] - 71:5, 71:17, 71:19, 71:24, 72:2, 74:25, 75:1, 75:24
**took** [13] - 8:18, 21:23, 22:8, 22:20, 23:15, 23:21, 25:19, 28:2, 46:9, 55:18, 59:13, 66:12, 69:6
**top** [7] - 42:12, 44:18, 52:22, 52:23, 63:22, 65:3, 65:8
**topic** [2] - 20:7, 72:25
**Toshiba** [6] - 21:5, 21:8, 23:24, 24:18, 34:23, 38:15
**touching** [2] - 24:9, 43:22
**tough** [4] - 20:7, 20:8
**towards** [1] - 15:23
**townhouse** [3] - 19:11, 56:22
**training** [2] - 12:8, 12:15
**transcribed** [1] - 78:9
**transcript** [6] - 2:1, 18:7, 62:11, 62:13, 67:3, 78:9
**transcripts** [8] - 18:7, 61:19, 61:25, 62:5, 62:6, 62:8
**translucent** [1] - 53:2
**transmitting** [1] - 14:23
**transported** [2] - 15:1, 16:4, 16:6
**travel** [1] - 71:22
**treat** [1] - 11:24
**trial** [7] - 3:21, 7:17, 11:7, 17:18, 18:10, 23:10, 29:7
**tried** [3] - 12:19, 24:24, 28:2
**trouble** [3] - 63:25, 65:25, 66:11
**trust** [1] - 66:3
**try** [4] - 17:16, 25:11, 34:1, 75:19
**trying** [3] - 15:23, 73:5, 75:23
**Tuesday** [1] - 1:10
**turn** [3] - 5:22, 18:25,

66:2
**turned** [3] - 6:23, 56:16, 58:2
**twenty** [1] - 10:3
**two** [13] - 4:14, 21:24, 23:8, 33:18, 33:19, 33:20, 41:14, 45:16, 45:18, 47:11, 49:9, 54:6, 71:12
**type** [5] - 30:25, 33:2, 34:4, 45:8, 49:24

**U**

**U.S** [1] - 1:23
**umbrella** [1] - 13:8
**unaltered** [1] - 60:18
**uncovered** [1] - 74:14
**under** [7] - 2:20, 3:17, 4:6, 5:16, 11:11, 11:21, 14:20
**understood** [1] - 66:25
**undisputed** [1] - 8:10
**undue** [1] - 7:23
**unfair** [1] - 7:23
**Union** [6] - 22:17, 46:11, 46:12, 47:15, 68:9, 69:8
**unique** [3] - 21:22, 32:25, 37:2
**United** [2] - 55:4, 60:13
**UNITED** [2] - 1:1, 1:4
**unless** [4] - 4:7, 8:5, 13:25
**unnecessarily** [1] - 6:2
**unnecessary** [1] - 71:21
**unpack** [1] - 56:18
**unrelated** [1] - 8:21
**unusual** [1] - 63:6
**up** [11] - 6:2, 11:8, 12:13, 13:7, 13:17, 23:21, 42:8, 50:5, 57:17, 59:6, 66:17
**upper** [1] - 52:22
**upstairs** [1] - 22:21
**US** [1] - 59:7
**USA** [1] - 78:6
**usual** [2] - 9:21, 71:14

**V**

**vagina** [1] - 24:9
**value** [2] - 41:24, 49:3
**various** [5] - 7:3, 15:8, 15:14, 26:2, 26:22
**verdict** [3] - 11:7, 14:8, 18:24

**vibrator** [1] - 19:17
**victim** [12] - 3:15, 3:16, 4:1, 14:20, 14:22, 16:17, 21:25, 22:1, 27:14, 34:1, 73:3, 74:6
**victim's** [2] - 2:20, 4:6
**victims** [1] - 3:14
**Victims'** [2] - 2:21, 3:14
**video** [12] - 14:24, 23:4, 33:17, 33:18, 34:4, 68:17, 68:19, 68:20, 68:24, 69:2, 69:3, 70:10
**video's** [1] - 68:22
**videos** [20] - 6:9, 7:22, 20:4, 20:18, 20:22, 21:12, 23:15, 23:23, 26:6, 26:12, 26:13, 26:15, 26:17, 27:18, 27:23, 33:21, 33:22, 34:2, 51:22
**view** [5] - 8:18, 15:10, 33:7, 57:20, 73:14
**viewed** [1] - 58:18
**viewer** [1] - 15:12
**viewing** [1] - 20:20
**views** [1] - 41:14
**vis** [2] - 46:17
**vis-a-vis** [1] - 46:17
**visible** [6] - 21:17, 22:2, 22:4, 24:13, 27:18, 52:18
**visit** [2] - 55:25, 56:2
**visitation** [1] - 60:17
**visitations** [4] - 59:23, 59:24, 59:25, 60:15
**visited** [3] - 22:21, 26:20, 58:16
**visitor** [2] - 60:20, 60:22
**visitors** [1] - 60:16
**visual** [6] - 14:23, 14:25, 16:3, 16:4, 16:8, 16:11
**voice** [1] - 62:18
**voices** [1] - 67:5
**Voir** [1] - 2:1
**VOLUME** [1] - 1:10
**vote** [1] - 18:2

## W

**waiting** [1] - 10:16
**walked** [1] - 22:21
**wall** [7] - 21:22, 22:9, 25:23, 33:3, 56:17, 57:17, 58:3
**wants** [3] - 3:1, 6:21, 7:14
**warrant** [39] - 8:17, 21:4, 22:10, 22:16, 23:1, 23:3, 32:2, 32:3, 34:10,

34:13, 34:20, 35:1, 35:12, 35:13, 38:16, 39:16, 40:14, 40:20, 40:25, 41:20, 45:4, 46:10, 46:25, 47:2, 48:7, 48:14, 50:24, 62:22, 68:8, 68:13, 68:16, 69:7, 69:10, 71:4, 73:22, 74:3, 74:7, 74:10, 74:12
**waste** [1] - 9:9
**watch** [1] - 28:20
**watching** [1] - 29:11
**WAYNE** [1] - 1:6
**Wayne** [4] - 31:6, 55:5, 60:14, 78:7
**wearing** [8] - 21:17, 21:18, 21:19, 32:18, 32:21, 32:22, 33:13, 34:5
**weather** [2] - 71:16, 75:20
**websites** [1] - 26:20
**wedding** [17] - 21:13, 23:3, 24:13, 25:24, 27:12, 27:18, 55:7, 55:11, 68:14, 68:15, 68:18, 69:16, 70:1, 70:7, 70:9, 70:10
**weight** [1] - 12:16
**welcome** [1] - 10:15
**West** [1] - 1:24
**Westminster** [7] - 19:20, 25:16, 27:16, 32:2, 35:3, 39:19, 41:7
**wet** [2] - 13:7, 13:8
**whatsoever** [1] - 18:19
**Whereof** [1] - 78:11
**white** [1] - 52:16
**wide** [1] - 32:23
**wife** [1] - 25:18
**window** [4] - 13:9, 52:17, 52:20, 52:25
**windows** [1] - 13:6
**wish** [1] - 2:14
**WITNESS** [5] - 29:22, 29:23, 30:2, 77:4, 77:5
**witness** [15] - 3:5, 3:20, 8:7, 9:20, 12:8, 13:17, 13:19, 16:13, 23:9, 25:5, 29:16, 35:6, 70:16, 70:25
**Witness** [1] - 78:11
**witness's** [1] - 13:18
**witnesses** [12] - 3:9, 3:11, 3:13, 11:10, 12:5, 18:16, 18:19, 25:14, 25:15, 28:5, 29:2, 29:3
**woman** [1] - 19:5
**words** [1] - 58:25
**worn** [1] - 52:17
**worried** [1] - 64:12
**worries** [1] - 64:11

**worry** [1] - 64:1
**write** [1] - 17:13
**writing** [3] - 54:13, 63:10, 63:11
**written** [2] - 15:5, 61:1
**wrote** [1] - 25:9

## Y

**year** [1] - 2:12
**years** [4] - 19:6, 19:19, 23:15, 30:24
**yellow** [2] - 22:3, 27:7
**yourself** [1] - 23:16
**yourselves** [1] - 17:7

## Z

**Zajac** [3] - 1:23, 78:5, 78:16
**zoomed** [1] - 39:7